L. W. NAMES, Appellant, v. THE DWELLING HOUSE INSURANCE COMPANY OF BOSTON, MASSACHUSETTS.

**Insurance:** OCCUPANCY. An occupancy of a building with intent to burn property therein contained, is not the occupancy which avoids policy stipulations against non-occupancy.

CONSPIRACY: INSTRUCTIONS. Evidence which tends to show that plaintiff and persons unknown conspired to burn a building for the purpose of burning personal property contained in it, that the house was not fired by plaintiff but by an unknown incendiary, and that plaintiff planned to realize upon a policy on personal property, which could be done only by burning the building, warrants the submission of said conspiracy, though the conspirators other than plaintiff are not identified.

SAME. A charge that if the jury find that plaintiff and others were engaged in a common, wrongful or fraudulent purpose which involved the burning of the house, one of them carrying out one part of the common plan and others other parts, it is authorized

to find therefrom a previous agreement, combination or understanding for such wrongful purpose—simply states that if two or more separately do things to effect a common purpose, the doing of the things warrants the conclusion that there was a previous understanding or agreement to do them—and is right.

**Evidence:** RELEVANCY. That a witness says on cross-examination that if a large number of books had been burned in a house as claimed, there would have been remnants, does not permit it to be shown by another that no remnants remained after the burning of another building, no idea being given as to the size of either building or the extent of either fire.

**Practice:** HARMLESS ERROR. The court erroneously stated one issue to be whether there was conspiracy to burn a building, the real issue being whether there was one to burn personal property contained in the building. *Held*, harmless error, because either conspiracy would defeat recovery on policy.

**Practice:** OPENING AND CLOSING. One who admits the allegations of the petition and relies upon affirmative defenses to defeat them is entitled to opening and closing the argument, though plaintiff was first put to full proof.

NEW TRIAL will not be granted for the discovery of cumulative evidence.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

SATURDAY, OCTOBER 12, 1895.

Action on policy of fire insurance. Judgment for defendant, and plaintiff appeals. *Affirmed.*

*R. M. Wright* for appellant.

*Yeoman & Kenyon* and *McVey & Cheshire* for appellee.

Granger, J.—The policy in suit was on a frame dwelling house in Fort Dodge, Iowa, and the amount covered thereby was eight hundred dollars. The policy issued to D. F. Names, and was by him assigned to Charles E. Names, and by him to the plaintiff. The policy issued on the first day of December, 1891, and the last assignment was made December 21, 1891.

The three persons named as holders of the policy are brothers. The plaintiff, after obtaining title to the property, obtained on his household goods and furniture, in other companies, three thousand dollars of insurance. That additional insurance was in three separate companies, the last policy issuing January 19, 1892. Plaintiff moved into the house early in January, 1892, and on the fifteenth day of the next month, the house with its contents was burned, the loss being total. The answer admits the issuing of the policy; that it is unpaid; and denies the other allegations of the petition. It further presents, by way of defense, that, because of the nonoccupancy of the building, the hazard of the defendant was increased, in violation of the terms of the policy. Also, that "the fire was procured by fraud, and with the knowledge, consent, and procurement of the plaintiff; that said plaintiff conspired with certain parties, to the defendant unknown, and procured a large amount of insurance on household goods, furniture, and books, alleged to be in said building, which the plaintiff did not own, and which were not at the time therein, nor were they at the time therein, nor owned by the plaintiff at the time of said fire, for the purpose and with the intent to burn said building and defraud the insurers of the amount of such insurance."

II. At the conclusion of the evidence, on application of counsel for defendant, they were permitted to open and close the arguments to the jury, of which complaint is made. Before granting the request, the following questions by the court were answered by the defendant: "Do you raise any question as to the issuance of the policy sued upon?" To which counsel responded, "No." "Do you dispute the ownership of the property destroyed by fire?" The answer is, "No." "Do you raise any issue as to the value of the property being the full amount mentioned

in the policy?" The answer is, "No." The court, after stating the issues, said to the jury in its instructions: "It is not disputed on the trial that the policy sued upon was issued by the defendant company, or that the building insured was destroyed by fire, or that the building so destroyed was of the full value of the sum named in the policy. As to none of these matters, then, will you need to spend any time, but will confine your attention entirely to the two questions raised by the defense: First, was the building left vacant or unoccupied at or before the time the loss occurred and after the policy issued? second, did the plaintiff, either himself or by conspiring or conniving with any other person or persons, burn said building or cause it to be burned? If the affirmative of either of said propositions has been established by a preponderance of the evidence, then your verdict will be for the defendant; but if neither of said propositions has been so established, your verdict will be for the plaintiff." The court was clearly right in its holding. The answers to the questions by the court enabled it to say to the jury (as it, in effect, did) that unless one of the affirmative defenses was proven there should be a verdict for plaintiff for the amount of the policy. The answers of defendant were admissions that plaintiff had proven his case. It only remained to be seen if defendant had established its defenses or one of them. On those issues it had the burden, and with no other issues involved it was entitled to the opening and closing to the jury. Code, section 2779. The district court has a discretion in such matters. *Woodward v. Laverty*, 14 Iowa, 381; *Preston v. Walker*, 26 Iowa, 205. There is a claim that before this was done plaintiff was put to full proof, and defendant had taken full advantage of its denials. But that does not change the legal situation, because the answers and the instructions had

given all that the jury could possibly give on that branch of the case.

III.   A theory of the defense is that the insurance on the personal property was obtained by fraudulent representations as to ownership, amount, and previous insurance thereon, and that the fire was set in pursuance of a conspiracy of plaintiff with others to defraud the insurance companies. The fire occurred about midnight, or later.   The testimony tended to (if it did not conclusively) show that plaintiff, at the time of the fire, was at Barnum, some nine miles from Ft. Dodge. After both parties had rested, but before the arguments began, the defense asked to be permitted to call certain witnesses for examination, which the court granted, and one Delano was examined, and testified that about 8 o'clock, or later, on the evening of the night of the fire he met the plaintiff with a load of furniture, going from Ft. Dodge.   An inference from the testimony is in aid of the defense of fraud and conspiracy, by having it appear that plaintiff was in Ft. Dodge early in the evening, and was taking furniture from the house for the value of which recovery is now sought.   The testimony of Delano was admitted without objection; but it is now urged that it was a surprise, and a new trial was asked on the ground of such surprise and of newly-discovered evidence.   Affidavits in support of the application dispute the evidence of Delano, and make it appear that it was a brother of the plaintiff that Delano met with the furniture.   Several affidavits were attached to the application showing new evidence, but we think that this evidence is cumulative in the sense that a new trial cannot be granted because of it.   The particular point sought to be proven is the whereabouts of plaintiff at a particular time; that is, was he in Barnum or Ft. Dodge on the evening of the night of the fire?   The particular fact was one of careful inquiry during the

trial, and was thought to be (as it was) important. The plaintiff testified that he did not meet Delano, and one Riley testified that he slept with plaintiff on the night of the fire, at Barnum, and was with him at 6 o'clock and at 11 o'clock in the evening. Other testimony tends to the same conclusion. The newly discovered testimony is to show the same fact. Under the well-established rule, not questioned in this case, a new trial cannot be awarded because of such evidence.

IV. There is a claim that the court misstated the issues to the jury. The court, in stating the charge of conspiracy to obtain insurance and burn the building, included in such fraudulent insurance the building, instead of limiting it to the insurance on the personal property. There is an inaccuracy in the statement, but it is an entirely harmless one, for the consequences are as broad and conclusive in the one case as in the other. If the fraudulent purpose existed as to one part of the insurance, and the building was burned in pursuance of it, the defense is as conclusive as if it existed as to all the insurance. In the statement of the issues we have quoted the language of the petition, and the inaccuracy will be seen to be without prejudice.

V. There is a complaint of the instructions because there is an implication that there is evidence of a conspiracy, when in fact there is none. The statement that there is an entire absence of such evidence is not warranted. In the sense, so vigorously presented, that the evidence in no way identifies any person or persons, by name or description, as a co-conspirator, the statement is correct. But the averment is that the conspiracy is with others' unknown, and it is not to be said but that a conspiracy may exist and be proven without the identification of the parties to the conspiracy. The inference that the house in question was fired by an incendiary is not

unwarranted.   The circumstances to support such a conclusion are strong.   But they do not point with the same certainty to the person.   The circumstances also indicate that the plaintiff planned to realize on the insurance he had obtained, which could only be done by the property being destroyed by fire.   The circumstances do not point to him as the person setting the fire, because of his known presence at another place at the time of the fire.   Such facts, more or less aided by other fact, may show a conspiracy; that is, be sufficient to warrant such a conclusion.   That, to our minds, is the situation of this case.   We cannot set out the evidence or facts in detail.   The evidence was sufficient to warrant the instruction.

VI.   There are several complaints of instructions given, and they are based on detached statements, and it is sought to give the language a meaning not intended or properly deducible, when all the language is considered that should and naturally would be.   We will consider the complaint as to the ninth instruction, because it is said to be full of error.   It treats of a conspiracy, and of the proofs from which the conclusions of a conspiracy would be warranted.   The eighth instruction defines a conspiracy, and the ninth treats of the proofs or facts from which a conspiracy may be found, and is as follows:   "In the nature of things, the evidence in proof of such charge will, in general, be circumstantial; and if, from all the testimony, you find that the plaintiff and any one or more other persons were engaged in a common wrongful or fraudulent purpose, which involved the burning of the house in controversy, one of them carrying out one part of the common plan, and others carrying out other parts of such plan, you will be authorized to find therefrom a previous agreement, combination, or understanding, for such wrongful purpose, which has already been defined to you as a "conspiracy."   The

criticism is that, instead of stating that in order to prove that the burning of the building was the result of a conspiracy it must appear "that there was an agreement to do the acts, and that the acts were done or caused to be done by one or more of the parties to the agreement, and in pursuance thereof," it "assumes a common design, purpose, or intent to burn the building, which is in itself a conspiracy, and then tells the jury that they are authorized to find this conspiracy from the fact that one person does one part and another does another part of an assumed common plan." This is said to be reasoning in a circle. We cannot see that any fact is assumed in the instruction. It says, in effect, that if two or more persons, separately, do things to effect a common purpose, the doing of the things warrants a conclusion of a previous understanding or agreement to do them. The proposition is hardly open to doubt. The instruction does not say that such a conclusion necessarily follows, but that it may legitimately follow, or, in other words, from such facts the jury are authorized or permitted to find the conclusion. We think the instruction both correct and apt, as applied to the facts of the case.

VII. It will be remembered that one of the defenses was nonoccupancy of the building. The evidence placed the fact somewhat in doubt, and on that branch the court in its instructions said: "If you find from the evidence that plaintiff had never moved into the insured building and occupied it as his dwelling or home, or if you find that after so taking up his home in said building he abandoned it and left it unoccupied or vacant, then the insurance policy was rendered void, and he cannot recover in this action; but if he did establish his home there, and in good faith maintained it until the time of the fire, then mere temporary absence of himself or other members of his family for a few hours or a few days at a time for

business or social purposes, with the intention of immediately returning, would not create such a vacancy or abandonment as to void the policy, and would not prevent his recovery for the loss." The only criticism is as to the words, "in good faith." The pertinency of the language did not at first seem clear. The question of good faith in the occupancy did not seem to be involved. But on further consideration, in view of the record, we do not think the language erroneous. The record is something of a showing of bad faith in the occupancy and use of the premises. Let us suppose that the occupancy, after the purchase, was merely to place personal property therein on which to place excessive insurance, and then destroy the entire property to obtain the insurance; that is, that the occupancy was designed as a cover under or by which plans were laid to destroy the property. That would not be an occupancy within the meaning of the policy. The occupancy provided for in the policy was intended as an added safety or security to the building, and not as a means of destruction. Such added safety or security results from maintaining a home in good faith, and that was evidently the thought of the court, and it was what the parties to the contract intended. The other occupancy is precisely what the parties did not intend. This conclusion has support in the reasoning in *Limburg v. Insurance Co.*, 90 Iowa, 709 (57 N. W. Rep. 626). We think, in view of the record, that there was no error in the instruction.

VIII. Plaintiff claimed the loss of some three or four hundred law books in the fire. A witness testified that he examined the ruins the morning after the fire and saw no remnants of books, and he testified that the outsides and edges usually burned where they were close together. One Paige, an insurance adjuster, gave testimony much to the same effect, and gave his opinion that in a fire like the one in question law books

would not be consumed, but only parts of them. On cross-examination he was asked about the burning of the bank in Ft. Dodge in 1880, and whether remnants of books were found there, and he said that he did not look. He then gave it as his opinion that if one thousand six hundred volumes burned, there would be some of them left, enough to identify a large portion. One Childs was then called by plaintiff, who testified that there was a law office in the bank, and that he saw the ruins immediately after the fire. He was then asked: "What indications were there of any burned portions of books, or unburned portions of books, in the ruins after the fire?" The question was excluded, and rightly so. The direct examination was limited to the effect of fire on books in a building like the one burned. The cross-examination included facts as to the fire in Ft. Dodge, and as to how the books were affected there the witness did not pretend to know. He gave an opinion as to the particular fire without any facts as to the extent of the fire, and without the jury knowing the facts. The offered evidence was to contradict the witness or show that his opinion was worthless. His opinion as to that fire was of no moment, because of the absence of data on which to base it, and was brought out on cross-examination. Under such circumstances, he could not be contradicted as to the particular fact. Some other questions are argued, which we have carefully considered, and find no error. The judgment is *affirmed.*