THE STATE OF IOWA v. FRANCIS E. SEERY, Appellant.

**Murder:** EVIDENCE. On a prosecution for murder where it appeared that defendant invited a fight with deceased, it was immaterial whether defendant came out of a building for the purpose of provoking a quarrel or of going to his own place of business, and its exclusion was not prejudicial.

**Same.** Where a witness was asked on cross-examination if he did not testify to certain matters on another occasion and he answered that he told what was asked of him, a refusal to strike

the answer was not prejudicial, the examination having been continued as to what he did say.

**Same:** Where no other cause of death was shown than that resulting from defendant's act, refusal to permit a showing that some particular surgical operation might have saved the life of deceased, was not erroneous.

**Cross-examination.** It is competent to cross-examine a witness as to his interest in a case and unfriendly feeling toward a defendant, but the court may properly deny an extended inquiry into the details of conversations between the witness and other persons.

**Evidence:** DEADLY WEAPON. Although the identification of a dangerous weapon may not have been sufficient to connect defendant with the crime. yet the evidence may be such as to permit its admission to illustrate the defendant's act.

**Examination of state's witness:** SCOPE. The examination of a witness on the trial is not confined to those matters testified to before the grand jury as disclosed by its minutes.

**Instructions.** On a charge of murder an instruction that "if you find from the evidence, as you are instructed you must, and under the law as given you herein, that defendant is guilty of a crime of which he can be convicted under this indictment, you must then determine of what degree or included crime he is guilty," was not objectionable as telling the jury they must convict. where it was followed by full instructions as to the degrees of murder and manslaughter, and they were told they could find him guilty of any one or acquit him of all.

**Same:** INTENT TO KILL. Intent to kill is not essential to the crime of murder in the second degree.

**Same:** DEADLY WEAPON. An instruction assuming that a rod used in an assault was a deadly weapon, was not objectionable where the court correctly defined the term "deadly weapon" and left it for the jury to determine the character of the rod.

**Same:** SELF DEFENSE. Where the evidence excludes the possibility that a defendant was acting in self defense at the time he made an assault with a dangerous weapon, failure to submit that issue was not erroneous.

**Murder in first degree:** SUBMISSION. On a prosecution for murder the evidence is held to show sufficient willfulness and premeditation to justify submission of the question of murder in the first degree.

**New trial:** misconduct. A new trial will not be granted solely
12  because counsel, in speaking to the court on some collateral
     question and not in the presence of the jury, refers to the
     fact that defendant was not a witness in his own behalf.

*Appeal from Benton District Court.*—Hon. Obed Caswell,
Judge.

Tuesday, January 9, 1906.

Appeal from a conviction for murder in the second degree.— *Affirmed.*

*Grimm, Trewin & Moffit,* for appellant.

*C. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

McClain, C. J.— Defendant was put on trial for murder in the first degree, alleged to have been committed by striking one Moynihan on the head with a long round piece of iron, inflicting a mortal wound, from which said Moynihan soon after died. The evidence tended to show that defendant accosted the deceased on the street in the village of Walford with some reference to a difficulty which had occurred between them the preceding day on Moynihan's farm near the village, and invited him to throw down some pieces of iron implements which he was carrying on his arm and engage in personal combat; that Moynihan declined the invitation to combat and threw one of the pieces of iron at the defendant; that defendant then exclaimed in an angry manner that he would " get something that will fix you," and ran about forty feet to where there was an old horse power standing near to a building occupied by defendant for the storing of some kind of agricultural implements or fixtures, and picked up a piece of iron rod about five feet long, with which he returned to Moynihan and struck him on the head, causing him to fall to the

ground; that defendant carried the rod back and threw it down near where he had got it, and then returned to where Moynihan was rising, and struck him with his fist; that the parties then separated and during the next day Moynihan died as the result of a fracture of the skull caused by the stroke from the iron rod. These are the principal facts disclosed by the evidence. Other details will be referred to in the discussion of the errors assigned by counsel.

I.   A witness of the affray testified that defendant came out of a bank building near where Moynihan was standing in the street talking with witness' companion, who

1. MURDER: evidence. was sitting in a buggy, and was asked by defendant's counsel, on cross-examination, whether defendant was frequently in the habit of going to the frame building across the street near to which he subsequently picked up the iron rod with which he struck Moynihan. The object of the question, no doubt, was to rebut any inference the jury might draw that defendant came out of the bank building and started across the street with the purpose of having a fight with Moynihan, and counsel no doubt desired to argue before the jury that the defendant's intent to have a fight with Moynihan was only formed after he came from the building and started across the street toward the frame building in which he kept his farm implements. But in the first place we think it wholly immaterial whether defendant came out of the bank building for the purpose of accosting Moynihan, or for the purpose of going to his store-house. It sufficiently appears that he did, without immediate provocation, accost Moynihan and invite him to fight. There could have been no prejudice, therefore, in excluding the testimony as to defendant's habit in going to his store building. In the second place, as it appears from the record, the question was not objected to until after the answer was given, so that, although the objection was sustained, the answer was already before the jury, and counsel did not ask to have it stricken out.

II.   The same witness was cross-examined as to his testimony at the coroner's inquest, and was asked whether he testified to a certain matter on that occasion, and answered that he told what was asked of him.

2. SAME.

Counsel for defendant moved to strike out this answer, and the motion was overruled, with a remark on the part of the court that counsel could not make the witness say " Yes " or " No." The cross-examination was continued as to what the witness said on the inquest, and we cannot see that the ruling made could have in any way prejudiced defendant's case. The defendant was not deprived of the opportunity to impeach the witness by proof of contradictory statements made before the coroner's jury.

III.   Some complaint is made as to limiting the cross-examination of a witness who testified that the injury inflicted on Moynihan by defendant caused his death; but, as we understand the record, the court simply re-

3. SAME.

fused to allow counsel to go into the question whether some particular form of surgical operation might have saved Moynihan's life, and, in the absence of evidence tending to indicate any other cause of death, we cannot see how it was at all material what might have been the result of some other method of treatment of the wound. *State v. Edgerton,* 100 Iowa, 63; *State v. Wood,* 112 Iowa, 411.

IV.   The sheriff who arrested defendant testified as to his conduct at and after the time of his arrest, and counsel for defendant sought on cross-examination to impeach him

4. CROSS EXAMI-
NATION.

by showing that he had taken a great interest in securing the conviction of the defendant. It was, of course, entirely competent for counsel to thus cross-examine the witness with reference to his interest in the case and any unfriendly feeling he may have entertained against the defendant; but we are unable to discover that the court unreasonably restricted counsel in this cross-examination. It was not competent for counsel to unduly extend such cross-examination by inquiring into the details

of conversations between the witness and other persons with reference to the case. The trial court seems to have thought that counsel were attempting to prove to the witness rather than to the jury that his answers with reference to not being prejudiced against the defendant were untrue, and we think the court was justified in the view which was taken of the questions asked, so far as objections were sustained, and that the rulings were not erroneous. They were certainly in no way prejudicial, for the material facts relating to the prejudice of the witness were fully developed. There must be some limit to the extent to which collateral matters can be dragged into a cross-examination, and we do not think that the court exceeded the proper exercise of its discretion.

V.    A piece of iron rod was introduced in evidence over objection for defendant, which, as the testimony tends to show, was the rod with which defendant struck the deceased.

5. EVIDENCE: deadly weapon. Counsel for defendant contend that the identification was not sufficient, and that it was error to admit the rod in evidence. But the witnesses testified that this piece of rod was picked up at about the place where defendant threw down the rod with which deceased had been struck, and that it corresponded in length and thickness with the one defendant used. Even if it was not sufficiently shown to be the identical piece of iron used, it served to illustrate the act of defendant, and no prejudice could have resulted from its introduction. *State v. Tyler*, 122 Iowa, 125 ; *State v. Gray*, 116 Iowa, 231. The rod introduced in evidence was not relied upon in any way as tending to connect the defendant with the crime, and therefore the case is clearly distinguishable from *State v. Phillips*, 118 Iowa, 660.

VI.    Objection was made that one witness, who was examined before the grand jury, and the minutes of whose testimony were returned with the indictment, was allowed to testify to a matter not referred to in the minutes of his tes-

timony. But this objection was without merit, and was
properly overruled. We have frequently held
that a witness may be examined as to any and
all matters within his knowledge, material to
the case, although some particular fact as to which he testi-
fies is not referred to in the minutes of his testimony. *State
v. Wrand,* 108 Iowa, 73.

6. EXAMINATION
OF STATE'S WIT-
NESS: scope.

VII. After instructing the jury as to the charge
against defendant and the defendant's plea, and as to the
burden being upon the prosecution to establish beyond a
reasonable doubt the allegations in the indict-
ment as to the commission of the crime, the
court gave an instruction as follows: " In this case, if you
find from the evidence, as you are instructed you must, and
under the law as given you herein, that the defendant is
guilty of a crime of which he can be convicted under this
indictment, you must then determine of what degree or in-
cluded crime he is guilty." It is argued that by this in-
struction the jurors were told that they must convict the
defendant under the evidence. The language of the instruc-
tion is perhaps unfortunate; but it is perfectly plain that
the jury could not have understood it as a direction that
the evidence required a conviction, for the court proceeded
to instruct fully as to the crime with which the defendant
was charged, and as to the two degrees of murder and the
included crime of manslaughter, of any one of which they
might find the defendant guilty, or of which he might be
acquitted, as they should find under the evidence. The jury
must have understood that the court did not intend to say that
the defendant should be convicted of some one of these three
crimes, for the forms of verdict submitted to them included
a form of verdict of not guilty. The instruction complained
of can properly be so read as to be consistent with the other
instructions given, and we are justified in assuming that
the jury so understood it. As so understood, it is not
open to the objection that it interferes with the full exer-

7. INSTRUCTIONS.

cise on the part of the jury of the right to pass upon the facts; nor, as so understood, does it give any indication to the jury as to the conclusion with reference to the facts which should be reached by them.

VIII. Two other instructions are complained of because, in defining murder in the second degree, they omit the requirement of intent to kill. But there is no merit in 8. SAME: intent this objection, for the instructions relate, not to kill. in general to intent to kill (which, however, is not essential to murder in the second degree), but to the specific intent to kill which the court instructs is essential in murder in the first degree, and not in murder in the second degree. In this respect the instructions were clearly correct. *State v. Gillick,* 7 Iowa, 287, 311; *State v. Decklotts,* 19 Iowa, 447; *State v. Morphy,* 33 Iowa, 270; *State v. Mewherter,* 46 Iowa, 88; *State v. Keasing,* 74 Iowa, 528.

The same instructions are objected to on the ground that they assume that the rod of iron used by the defendant in making the assault was a deadly weapon. It is true that 9. SAME: deadly the question whether the weapon used in an weapon. assault resulting in death is a deadly weapon depends on the testimony, and is a question for the jury; but the court correctly defined the term in another instruction, and left it to the jury to determine whether it was a deadly weapon or not.

IX. The court did not submit to the jury any question as to whether the assault by defendant was excusable as committed in self-defense, but we think that there was 10. SAME: self- nothing in the evidence requiring the submis- defense. sion of that question. There is not the slightest pretense that after the deceased threw the piece of iron at defendant he attempted to pursue him or continued any effort to inflict injury, or that the defendant, after going forty feet away and picking up the iron rod, had any occasion in the defense of his person from apparent danger to return with it and strike the deceased on the head. The

uncontradicted facts plainly exclude the possibility that the defendant was acting in the reasonable apprehension of danger from deceased at the time he procured his weapon and returned to the assault.

X.   It is urged that the court committed error in submitting to the jury the question whether defendant was guilty of murder in the first degree; but we think that there is in the record sufficient evidence of willful-ness and premeditation to justify the submission of the question, and to have sustained a verdict of murder in the first degree, had the jury so found; and we have no occasion to interfere with the conviction on this ground.

11. MURDER IN FIRST DEGREE: submission.

XI.   Misconduct of counsel for prosecution is relied upon as ground for new trial; the contention being that counsel referred indirectly to the fact that defendant had not testified as a witness, in violation of the express provisions of Code, sec. 5484.   It appears that such indirect reference as was claimed to have been made to the fact that defendant was not a witness was in remarks of counsel made to the court not in the presence of the jury.   But it is contended that the statute prohibits any such reference " during trial," and that the prohibition extends therefore to remarks of counsel addressed to the court as fully as to remarks made to the jury.   In *State v. Ryan,* 70 Iowa, 154, it was held that such reference in argument to the court in the presence of the jury was prohibited, and this is plainly in accordance with the statute, the policy of which is to prevent the privilege given to the defendant to testify being turned into a weapon of attack upon defendant by bringing to the jurors' attention directly or indirectly the fact that defendant has not availed himself of this privilege.   But there is nothing in the policy of the statute to justify the inference that it was intended that a new trial should be granted merely on the ground that counsel, in arguing some collateral matter before the court, not in the presence of the jury, has assumed

12. NEW TRIAL: misconduct.

the fact, perfectly evident to the judge and necessarily al-
ready within his mind, that the defendant has not testified.
That fact could not in any way be prejudicial to the de-
fendant in the mind of the court.   We are, we think, justi-
fied in assuming that the court understood the law, and
that he would not be biased in the discharge of his duty
by a fact which, by statute, is not to be given any weight.
In view of the manifest purpose of the statute, it is clear
that the reference which is prohibited is any reference which
may come to the notice of the jury to the fact that the de-
fendant has not seen fit to become a witness in his own be-
half.

     Some objections to instructions not already specifically
noticed are made in argument, but we are satisfied, on the
reading of the instructions referred to, that they are not open
to the objections made.

     Finding no error in the record, the conviction of de-
fendant and sentence imposed upon him by the trial court
are *affirmed.*