F. E. Koonts, Appellant, v. Farmers Mutual Insurance Association et al., Appellees.

No. 46547.

88

OCTOBER 17, 1944.

A. L. Doud, Jr., of Douds, and Thoma & Thoma, of Fairfield, for appellant.

McBeth & Stong, of Keosauqua, and Tomasek & Vogel, of Grinnell, for appellees.

GARFIELD, J.—Plaintiff lived on a forty-two-acre farm. Before daybreak on September 11, 1942, his dwelling, barn, granary, machine house, chicken house, and oats bin caught fire and were destroyed. It is conceded the fires were of incendiary origin.

On August 23, 1942, two barns in the neighborhood of plaintiff's farm were destroyed by fire thought to have been of incendiary origin. After those fires plaintiff, a member of defendant association for forty years, looked at his insurance policy and found that it incorrectly described some of his buildings. Two directors of the association came to plaintiff's farm on August 25th, presumably at plaintiff's request, to see if the buildings were correctly described in the policy and if additional insurance could be written on them. These directors agreed to increase the insurance on the dwelling from $1,200 to $1,600, on its contents from $800 to $1,000, and on the granary from $100 to $125. Plaintiff surrendered the policy then in force, signed an application for a new policy in the amounts agreed upon, paid a dollar for the issuance of the new policy and the initial fee for the added insurance. The directors told plaintiff a new policy would be issued and delivered to him but plaintiff never received it.

Plaintiff's petition sought recovery for the fire loss from defendant association, its president, secretary, and the two directors above referred to, on the theory that they negligently failed to issue the policy. The answer was in effect a general denial and a plea that plaintiff willfully set the fires. After three questions had been asked plaintiff's first witness, defendants' counsel announced that they conceded "the insurance was in effect." Plaintiff's counsel made no objection to this announcement. Apparently defendants' counsel made a similar concession in his opening statement to the jury. At the conclusion of the testimony of the first witness defendants' counsel again conceded "there was in effect at the time of the fire, insurance that is now claimed in plaintiff's petition." Plaintiff's counsel moved to strike the concession, saying, "They can't prove the policy was delivered. They can't come in and concede a thing of that kind." The motion was overruled.

At the conclusion of their evidence defendants filed a

written concession that insurance in the amounts claimed by plaintiff, totaling $4,125, was in full force, the values of the insured buildings and contents were as claimed by plaintiff and they were destroyed by fire. Plaintiff moved to strike the concession that the insurance was in force on the ground that it was an improper attempt to change the issues and theory of the case. The motion was overruled. In submitting the case to the jury, the trial court directed the jury to return a verdict for plaintiff for the amount claimed by him unless defendants had proven by a preponderance of the evidence that plaintiff willfully set fire to his buildings.

I. Plaintiff first contends that the issue of defendants' negligence in failing to deliver the policy should have been submitted to the jury and the concession that the insurance was in force should have been stricken. We think, however, the trial court was right. It may be conceded that plaintiff's pleaded cause of action was properly based on negligence in not issuing the new policy. See Mortimer v. Farmers Mut. F. & L. Ins. Assn., 217 Iowa 1246, 1248, 249 N.W. 405, and cases cited. It may also be conceded that ordinarily a party is entitled to have submitted to the jury the theory stated in his pleadings if supported by the evidence. See Harrington v. Fortman, 233 Iowa 92, 100, 8 N.W. 2d 713, 717, and cases cited; Kempe v. Bennett & Binford, 134 Iowa 247, 250, 251, 111 N.W. 926, and cases cited.

But all that plaintiff could legally claim for the alleged negligence of defendants is that his new insurance was in effect. The concession gave plaintiff all he could claim in this respect. The court was not required to submit to the jury the issue of defendants' negligence because the legal effect of a finding for plaintiff on that issue was conceded by defendants. Applicable here, at least by analogy, is the rule that ordinarily it is neither necessary nor proper to submit to the jury facts which are uncontroverted or conceded. International Stock Food Co. v. Beshey, 200 Iowa 165, 167, 204 N. W. 265, and cases cited; Northwest Sec. Co. v. Schneckloth, 199 Iowa 545, 547, 202 N.W. 97; 64 C. J. 338, section 336. Since the court directed the jury to find for plaintiff unless defendants estab-

lished their affirmative defense that plaintiff willfully set the fire, plaintiff was not prejudiced by the way in which the case was submitted to the jury nor by permitting defendants' concession to stand.

Plaintiff argues that it was prejudiced because without defendants' concession plaintiff would have been entitled to open and close the argument to the jury. But it cannot be said that in such event a verdict for plaintiff would have been more probable. Plaintiff's right of recovery, aside from the affirmative defense, would then have been a matter for the jury to determine, whereas the court peremptorily instructed there was such right if the fires were not set by plaintiff. Since only this issue was submitted to the jury, defendants were entitled to the opening and closing arguments and plaintiff was not prejudiced in this respect. Names v. Dwelling House Ins. Co., 95 Iowa 642, 645, 64 N.W. 628.

But it is argued that plaintiff had a motive for setting fire to his buildings if his insurance was in force but there would be no such motive if the insurance was not in effect. Plaintiff therefore says that defendants should not have been permitted to make a concession which established a motive for plaintiff to burn his property. It may be conceded that one who believes his property is insured has a greater incentive to set fire to it than if he had no such belief. Defendants by their concession could not deprive plaintiff of the right to offer proper evidence bearing on the question whether he set fire to his buildings. However, so far as the record shows, plaintiff was in no way restricted in his offer of evidence as a result of defendants' concession. Plaintiff was permitted to and did fully show the facts regarding the surrender of his old policy and the nonissuance of the new one. So far as we can tell, the evidence is the same as it would have been had the issue of defendants' negligence been submitted to the jury. Prejudice to plaintiff in the respect claimed therefore does not appear.

II. On August 23, 1942, a barn of Charles Witt and a barn of Rex Peacock, both in plaintiff's neighborhood, were destroyed by fire. Both Peacock and Witt went to plaintiff's farm while his buildings were burning and upon the trial testified for defendants. It appears these witnesses suspected that

plaintiff set the fires of August 23d. This suspicion was based at least in part upon what they had been told by a fortuneteller in Ottumwa, whom they consulted in an attempt to learn the cause of their fires. It is contended plaintiff was unduly restricted in cross-examining Witt and Peacock. Witt testified on cross-examination that he was suspicious of plaintiff before plaintiff's fire. This record was then made:

"Q. The thing that made you suspicious is what the fortune teller told you at Ottumwa? A. Yes. Q. The fortune teller did tell you something to that effect, didn't he? Objection as immaterial sustained. Q. When did you go to that fortune teller in Ottumwa? Same objection and ruling."

An objection as immaterial was sustained to this question asked Peacock on cross-examination:

"Didn't you and Charlie Witt talk this matter over that Koonts was responsible for your fire and his fire?"

However, Peacock testified on cross-examination:

"We wondered whether or not Mr. Koonts was responsible for the fire on my place. Before that night Mr. Hendricks and Mr. Witt and myself had talked about it. We were anxious to know, so instead of going direct to the Koonts fire I went and got Mr. Witt, who is the fellow Hendricks and I had been talking with about Koonts."

It is, of course, elementary that the trial court has considerable discretion in determining the scope and extent of cross-examination. Colburn v. Krabill, 232 Iowa 290, 293, 3 N.W. 2d 154, 156, and citations. This is especially true where, as here, the examination pertains to a collateral matter designed to show the feeling of the witness toward a party to the suit. State v. Seery, 129 Iowa 259, 263, 264, 105 N.W. 511; Matthews v. Luers Drug Co., 110 Iowa 231, 234, 81 N.W. 464. In view of the testimony given by Witt and Peacock on cross-examination, no abuse of discretion appears in the above rulings. At least part of the above question asked Peacock was answered by the testimony of this witness we have set out. In any event, the unfriendly feeling of both witnesses toward plaintiff was

clearly shown. The questions asked Witt which he was not permitted to answer were largely in the nature of repetition or amplification of his other testimony on cross-examination. Colburn v. Krabill, supra.

██ III. Thompson, a special investigator for the state bureau of investigation, testified for defendants that he investigated the fire and had several conversations with plaintiff regarding it. He identified and there was received in evidence a signed statement he had taken from plaintiff. On cross-examination by plaintiff, Thompson testified that plaintiff co-operated with him and other officers in trying to find out who had set fire to the buildings in that neighborhood.

In rebuttal plaintiff testified:

"I co-operated with the officers investigating these fires that occurred out in that community. I did everything they asked me to do. They asked me to come down and submit to a lie detector test. * * * Q. In giving that co-operation did you do everything that Mr. Thompson asked you to do? A. That's right."

The court sustained defendants' objections to these two questions put to plaintiff on rebuttal:

"Did he [Mr. Thompson] ask you to come to Keosauqua and submit to a test he told you was a lie detector * * *? Did you submit to that test for the officers?"

Plaintiff argues that since defendants offered testimony of part of the investigation by Thompson, he had a right under sections 11272, 11273, Code, 1939, to show all that occurred in that connection and therefore these two questions were proper. We think, however, the rulings do not constitute such an abuse of discretion as amounts to reversible error. Plaintiff did testify in effect that he submitted to the lie-detector test when he said he did everything the officers asked him to do and that they asked him to submit to such a test. That plaintiff was not permitted to emphasize or repeat this testimony is insufficient basis for reversal. The question of the admissibility generally of evidence of a lie-detector test or the result thereof need not be considered.

IV. Plaintiff offered to prove by several different witnesses that they knew plaintiff's general reputation for moral character and that it was good. The trial court's exclusion of the offered proof was proper.

Evidence of good character of a party to a civil action is ordinarily not admissible. 32 C.J.S. 55, 56, section 423; 20 Am. Jur. 299, section 319. There is an exception to the rule where the party's character is put directly in issue, as in civil actions for seduction, criminal conversation, libel and slander. 20 Am. Jur. 299, 300, section 319; 32 C.J.S. 57, section 424; Stone v. Hawkeye Ins. Co., 68 Iowa 737, 743, 28 N.W. 47, 56 Am. Rep. 870. Although there are some decisions to the contrary, it is generally held that a party is not entitled to offer evidence of his good character merely because his adversary has charged him with an act such as incendiarism for which he might be prosecuted criminally. 32 C.J.S. 59, 60, section 426; 20 Am. Jur. 299, 300, section 319; annotation 78 A. L. R. 643, 644, 649; annotation 49 L.R.A., N.S., 724, 725. We are committed to this rule and see no reason to depart therefrom. Stone v. Hawkeye Ins. Co., supra, 68 Iowa 737, 743, 744, 28 N. W. 47, 56 Am. Rep. 870; Hall v. Rankin, 87 Iowa 261, 264, 54 N.W. 217.

V. Finally, plaintiff contends his motion for a directed verdict should have been sustained because of the insufficiency of the evidence that plaintiff willfully set fire to his buildings. We think the evidence was sufficient to warrant submission to the jury.

It is true the evidence tending to show that plaintiff set fire to his buildings is wholly circumstantial. However, this is ordinarily the only evidence obtainable. One could scarcely be expected to set fire to his property in the presence of others. 6 C.J.S. 759, section 38a; State v. Cristani, 192 Iowa 615, 622, 185 N. W. 111; Weiner v. Aetna Ins. Co., 127 Neb. 572, 256 N.W. 71, 77, and citations. The defense that plaintiff set fire to his property need not be proven beyond a reasonable doubt but only by a preponderance of the evidence. Natalini v. Northwestern F. & M. Ins. Co., 219 Iowa 806, 810, 259 N.W. 577, and cases cited; Weiner case, supra, and citations at page 587 of 127 Neb., page 78 of 256 N.W. In determining whether plain-

tiff's motion for directed verdict should have been sustained, the evidence should be viewed in the light most favorable to defendants. Natalini case, supra.

As stated, it is conceded that plaintiff's buildings were burned by incendiary fire. All six buildings caught fire at about the same time. Plaintiff was alone on the premises at the time. His wife was doing nursing about twenty-five miles away. There is no evidence that any other person caused these incendiary fires. There is substantial evidence of the following: Plaintiff believed he had insurance in the increased amounts agreed upon. Such a quantity of personal property was removed from the house and in such manner that some of it must have been moved out before the fire and apparently in preparation for it. Plaintiff testified in effect that he hurriedly removed the radio from the house during the progress of the fire. One of the neighbors who arrived during the progress of the fire testified that he observed the radio outside the house, "the cord taken off battery was wrapped around it and folded up in nice shape and put in a box." The same witness said, "There was a little cart out south of where the barn had been; was full of currycombs, wrenches and oil cans."

The conclusion is warranted that plaintiff's explanation of the starting of the fires is improbable. It is inconsistent with other evidence. Plaintiff testified he was awakened by a noise like a shot or blowout. He got up and discovered the house on fire. "It was in the south end of the house up in the gable—that would be the attic." There was no stairway to the attic. It could be reached only through a hole. Plaintiff said he tried to telephone for help but the telephone wire had been cut. He then started carrying out the contents of the house, first from the upstairs and then the downstairs:

"While I was carrying things out of the house downstairs I discovered there was a fire in the barn. I then ran out to see about the stock. There was no livestock in the barn. I came back to the granary where I discovered both the granary and tool [machine] house on fire."

The barn was about one hundred fifty feet from the house —the granary, machine house, and chicken house were about

midway between the house and barn. Plaintiff was near the granary and machine house in going from the house to the barn. At that time he noticed no fire in them.

While plaintiff testified several times that he discovered the fire in the south gable of the house, several neighbors testified they looked but saw no fire there when they arrived and that the fire was then confined to the back porch. One witness said the south wall was the last to fall. Plaintiff testified that when the neighbors arrived, ''The house itself was so badly on fire that it was impossible to go in and bring things out of the house any longer.'' However, one of the neighbors testified:

''When we got there the fire was just starting good. The back porch was burning. * * * Did not observe any fire at that time or previous thereto in any other part of the house. Saw no fire in the front part of the house, or in the kitchen or south end of the main part of the house. Did not observe any fire in the upper part of the house at the time I got there. Saw the upper part of the house as I came to the fire.''

It is true plaintiff denied that he set fire to his buildings and there is substantial testimony tending to corroborate him. We think, however, the issue was for the jury and that we are not justified in interfering. The evidence seems fully as strong as in Natalini v. Northwestern F. & M. Ins. Co., supra, 219 Iowa 806, 259 N. W. 577, where we reversed the trial court for directing a verdict for the insured on a similar issue. See, also, State v. Billberg, 229 Iowa 1208, 296 N. W. 396; Weiner v. Aetna Ins. Co., supra, 127 Neb. 572, 256 N. W. 71.—Affirmed.

All JUSTICES concur.