## L. W. Names v. The Union Insurance Company, Appellant.

**Concurrent Insurance:** FRAUD: An insurance company cannot complain in an action upon a policy issued by it, that one whose property has been destroyed by fire, placed additional insurance upon it with another company, and at the time of his application therefor, stated that the property was not insured, where there was no limitation in defendant's policy as to concurrent insurance, since such misrepresentation was not a fraud upon the defendant.

**Evidence:** OFFER OF PROOF OF LOSS. That the proof of loss was offered in evidence in an action upon an insurance policy, both for the purpose of showing that it was made and as tending to show what articles were lost, and their value, is not prejudicial to the defendant company.

SAME. A witness who testifies that he was at a certain house on the evening before it was destroyed by fire, may state that he had heard that it was said that he burned the property, where in an action on the policy the insurance company alleged that the plaintiff had burned the house, or caused it to be burned.

SAME. A witness who visited a house some days before, and also on the evening it was destroyed by fire, may testify whether she saw anything to indicate that there was less property in the house on that evening than on her former visit, when the insurance company alleged that the plaintiff removed some of his property from the house, before the fire.

WITNESS: *Competency.* One formerly in the mercantile business, although for some years retired, may testify in an action upon an insurance policy as to the value of articles destroyed, and the fact that he is not actually engaged in trade, while affecting the weight of his evidence, is not ground for excluding it.

PLEA AND PROOF: *Amendment.* Testimony may be given of the value of an article destroyed by fire, but not included in the proof of loss, in an action on the policy, since the plaintiff has the right to amend to conform to the proof.

REMOTENESS. Evidence that it was more expensive to ship law books by mail than by express, and that plaintiff had received no law books by express, is too remote to show that plaintiff had not received law books by mail.

New Trial: NEWLY DISCOVERED EVIDENCE    Testimony of plaintiff that he had bought books in the fall of 1890. is not such a surprise to defendant as to allow him a new trial to present newly discovered evidence contradicting such statement, where on a previous trial plaintiff had testified that he purchased books after the spring of 1890, and counsel for defendant had, before the trial, read depositions to that effect, and defendant had presented evidence on the trial as to the purchase of such books.

Appeal: CONFLICTING EVIDENCE.  A verdict based upon conflicting testimony will not be disturbed on appeal, when it has evidence to support it.

*Appeal from Wright District Court.*—HON. P. B. BIRD-SALL, Judge.

## WEDNESDAY, FEBRUARY 2, 1898.

ACTION to recover on a policy of insurance issued by the defendant to the plaintiff, insuring personal property contained in a certain dwelling house in the city of Fort Dodge against loss or damage by fire in the sum of one thousand dollars. Plaintiff alleges a total loss of said property by fire on the night of February 15, 1892; that he made proofs of loss, and otherwise complied with the terms of the policy; that the property was of the value of three thousand five hundred dollars; and that defendant has paid no part of said loss. He asks judgment for one thousand dollars, with interest. Defendant answered, admitting the execution of the policy, that no part of the alleged loss had been paid by it, and pleading in defense, in substance, as follows: That the policy was procured by fraud, and by concealment of the amount of insurance which plaintiff had upon his property at the time of taking out his policy; that the plaintiff made a false and fraudulent schedule of the pretended property destroyed; that the property had been removed before the fire · and that the building was set on fire, or procured to be set on

fire, by the plaintiff.  Verdict and judgment were rendered in favor of the plaintiff for the amount claimed. Defendant appeals.—*Affirmed.*

*Yeoman & Kenyon* and *McVey & Cheshire* for appellant.

*R. M. Wright* and *T. M. Healy* for appellee.

GIVEN, J.—I.  Defendant moved for a new trial upon the ground, among others, of newly discovered evidence, and now complains of the overruling of its motion as to that ground.  Among the property insured is "printed books."  Plaintiff asks to recover for books claimed to have been destroyed, including twenty-four volumes and index, Encyclopedia Britannica, two hundred and forty dollars, and a large number of law books.  In support of its motion the defendant filed the affidavit of two of its counsel to the effect that on the trial of the case of *Names v. Dwelling-House Ins. Co.*, 95 Iowa, 642, previously had, based upon the same loss, plaintiff testified that he bought no law books after the spring of 1890, and that they were surprised by his testimony on this trial that he had bought thirty or thirty-two law books of Callaghan & Co., of Chicago, in the fall if 1890.  They produced the affidavits of Willis R. Thomas and of W. H. Woodward, of Callaghan & Co., and of Frederick B. Smith, of A. C. McClurg & Co., book dealers in Chicago, tending to show that plaintiff did not buy books of either of said houses in the fall of 1890.  On said former trial it was shown that some of the books claimed to have been destroyed were not published until after the spring of 1890.  On this trial plaintiff testified to having purchased the Encyclopedia Britannica, with the index, and thirty or thirty-two volumes of law books, from said dealers, in the fall of 1890, and that he had them sent to his lodgings in the

city, from whence he brought them to his home. In resistance of the motion, plaintiff shows by his own affidavit, into which he copies from the record of the former trial extracts of his testimony, to the effect, that he testified that he did purchase "quite a good many books in Chicago after the spring of 1890." He further shows, by the affidavit of one of his counsel that, about ten days before the commencement of the trial of this case, counsel for defendant read the depositions of Mrs. Hayes and her daughter, taken and filed in this case by the plaintiff, in which they testified, in substance, that a brother of the plaintiff roomed with them in Chicago; that plaintiff lodged with them for a time in 1890, and that while there a lot of books were brought to their house and placed in the parlor; that plaintiff opened said books; that they saw twenty-five volumes of the Encyclopedia Britannica among them, and about thirty law books. It appears that defendant took and used on this trial a deposition of said Smith, of McClurg & Co., as to the value of the Encyclopedia Britannica; and of said Thompson, of Callaghan & Co., that plaintiff purchased McClain's Code and Digest, May 7, 1890, and that their books did not show any later purchases by him. In view of said extracts from plaintiff's former testimony, we think the conclusion warranted that he testified on that trial to the purchase of books after the spring of 1890. This conclusion is strengthened by the fact that the defendant took the deposition of said Smith and Thompson. For this reason, and the further fact that defendant's counsel had read the deposition of Mrs. Hayes and her daughter ten days prior to this trial, they should not have been surprised that the plaintiff testified as he did concerning the purchase of the books in the fall of 1890. With this state of the record, we think the district court might properly hold that the newly-discovered evidence was merely cumulative, and that the defendant had not shown reason for surprise,

or the exercise of diligence, and that, therefore, a new trial should not be granted on the ground of newly-discovered evidence.

II.    The record shows that plaintiff offered in evidence the proof of loss, identified as furnished to the defendant, to which is attached a list of the articles claimed to have been lost, with the value of each, aggregating three thousand four hundred and fifty-four dollars. Upon inquiry by defendant's counsel as to the purpose for which this offer was made, counsel for plaintiff answered as follows: "I offer this for several purposes, one of which is that the several items contained in this exhibit have been identified as the items of goods, etc., that were destroyed in the fire, and the reasonable market value of the same at the time, and as enumerating and describing the several articles lost in the fire. That is one of the purposes. The other is, of course, to show that such proof was given."

Defendant objected as incompetent, immaterial, and irrelevant, which objection was overruled, the court remarking: "It is not to be taken by the jury as establishing a distinct fact in relation to the cause or origin of the fire." Thereupon the proof of loss was read to the jury. Defendant's counsel contend, upon the authority of numerous cases cited, that the proof of loss was only admissible for the purpose of showing that it was furnished to the defendant, and that it was not competent evidence to establish any of the matters stated therein. This statement of the law is not disputed, and therefore we do not refer to the authorities. It appears that a copy of the proof of loss, including the schedule of articles, and the value of each, was set out in the petition, and that, previous to this offer, plaintiff had been examined at length with reference to the items and values shown in that schedule. Now, if plaintiff had produced and identified a copy of this schedule as a correct statement of the articles lost, and of the value

of each,—the articles being numerous,—that copy, thus verified, would have been admissible, as tending to show what articles were destroyed, and their value. Now, according to the statement of plaintiff's counsel, this exhibit (the schedule) was offered because it had been identified as to the items of goods destroyed, and as giving the value thereof. While it would have avoided confusion to have offered the proof of loss, to show that such proof was given, and to have separately offered the schedule as identified by the plaintiff in his evidence, yet we think no prejudice could have resulted from the offer being made as it was. The proof of loss was, as stated, offered "to show that such proof was given," and the schedule attached was offered to show what property had been destroyed, and its value, for the reason that it had been testified to by the plaintiff as a correct schedule of the lost property, and its value, and not as proof, independent of his testimony, of the property lost, and of its value. If defendant desired that the purposes of the offer should have been more clearly presented to the jury, an instruction to that effect should have been asked. We think the defendant was not prejudiced by the offer as made.

III.    Defendant assigns and discusses several rulings of the court in taking testimony, as erroneous. A Miss Griffin, having testified that she was in plaintiff's house two or three weeks before the fire, and also on the evening of the fire, was asked to say whether on that evening she saw anything to indicate that there was less property in the house than there was at the time of her former visit. This was objected to, and the objection overruled; and it is urged that the evidence was incompetent and immaterial, because there was no claim that plaintiff had changed the contents of his house between the two visits. It was claimed that Names had removed some of his property from the

house before the fire. This evidence was competent to rebut that contention. One McCaffrey, witness for the plaintiff, who had been at the house with the others on the evening before the fire, was asked if he had heard that it had been said in this case that he burned the property, to which he answered that he had. In view of his testimony as to how he came to be at the house, and the claim of the defendant that plaintiff had burned, or caused to be burned, we think there was no prejudice to defendant in permitting this answer. Mrs. Sherman, who had testified as to the articles destroyed, stated that there were "three feather beds,—only two in the proof of loss." She was asked what the one not in the proof of loss was worth, to which she answered, "About ten dollars." Defendant's objection that the question was immaterial was properly overruled, as plaintiff had a right to amend to conform to the proofs. One Julius was examined as to the value of articles claimed to have been lost. It is contended that, as he said he had not been in the mercantile business for about eleven years, he was not competent to testify to values, and that the court erred in not sustaining defendant's motion to strike his evidence. While that statement would go to the weight to be given to his evidence, it was no ground for excluding it. Defendant offered in evidence certain sections of the United States statutes, as to the weight of books receivable for carriage in the mails, and the rate of postage chargeable thereon. This evidence was offered, in connection with certain other evidence introduced as to the weight of law books, and the rate of express charges thereon, for the purpose of showing that their shipment by mail would be more expensive than by express. Evidence was also introdudced tending to show that plaintiff did not receive books by express. This evidence was offered to show that plaintiff did not

receive law books through the mail. It was too remote for that purpose, and there was no error in excluding it. Other errors assigned upon rulings in taking the testimony are not argued, and therefore will not be considered. We discover no prejudicial errors in the rulings on evidence.

IV. We next notice defendant's contention that this policy was procured by fraud. This contention rests upon the following facts: On the thirty-first day of December, 1891, this policy was issued for one thousand dollars, plaintiff then having insurance in another company for one thousand dollars. In January following he took out an additional one thousand dollars on the same property, in the Home Insurance Company. The agent through whom that policy was taken testifies that plaintiff told him that he had no other insurance on the property. If this false statement was fraudulent, it was against the Home Insurance Company, and not this defendant. There is no provision in defendant's policy limiting as to concurrent insurance. The only provisions are that in case of loss the plaintiff shall state "all other insurance covering any of said property;" also, that this company shall not, "under any circumstances whatever, be liable for a greater portion of any loss upon the property described in this policy than the sum hereby insured bears to the whole sum insured thereon, whether such other insurance be by specific or by general or by floating policies, or whether such other insurance be valid or not, and without reference to the solvency of other insurance companies." In view of the terms of this policy, we do not think that the additional insurance, though procured by misrepresentation, was a fraud upon this defendant.

V. The defendant's further contention is that the verdict is contrary to the evidence, and was the result

of passion and prejudice. Defendant's contention as to the origin of the fire, the removal of the furniture from the building, that furniture claimed to be lost was never in the building, that the building would not contain the furniture and library claimed to have been lost, and that plaintiff did not have all the books claimed in the schedule, are all involved in the inquiry as to the sufficiency of the evidence to sustain the verdict. The evidence is voluminous, covering more than two hundred and fifty closely printed pages of abstract. We will not consume the space necessary to set out or discuss this evidence, but rest our conclusion upon the careful examination which we have given it. There is certainly much warrant in the evidence for the argument that defendant's counsel make against the justness of this verdict, especially as to the amount of property claimed to have been in the house at the time of the fire. There is force in the argument that the dimensions of the house were not sufficient to contain all the furniture claimed to have been therein, and that the library room was too small to contain the "over one hundred volumes of miscellaneous books" and the two hundred and fifty or more volumes of law books." It is not contended in argument that the matters alleged as defense were not properly submitted to the jury, and, while we might find differently as to the amount of property lost, we cannot say that the verdict of the jury is without evidence to sustain it. The evidence as to the amount of property in the building at the time of the fire was conflicting. It was the province of the jury to settle this conflict, and this they have done by finding with the plaintiff. Under the oft-repeated decisions of this court, we cannot say that the verdict is contrary to the evidence. Our conclusions upon the whole record is that the judgment of the district court should be AFFIRMED.