### BANK OF BRUNSON v. ÆTNA INS. CO. OF HARTFORD, CONN.

(Circuit Court of Appeals, Fourth Circuit. March 6, 1913.)

#### No. 1,137.

1. INSURANCE (§ 375*)—INSURANCE AGENTS—AUTHORITY—QUESTION FOR JURY.

Under the South Carolina statute (Civ. Code 1902, § 1810), which provides that one shall be held to be the agent of a foreign insurance company in soliciting insurance, delivering policies, adjusting losses, etc., it can be found that local agents, through whom a policy was issued, and who countersigned it and consented to its assignment for the insurance company, were authorized to waive proof of loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 948–951, 956–965; Dec. Dig. § 375.*]

2. INSURANCE (§ 668*)—PROOF OF LOSS—WAIVER—JURY QUESTION.

In an action on a fire policy, whether insurer waived proof of loss held, under the evidence, a jury question.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. § 668.*]

In Error to the District Court of the United States for the District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

Action by the Bank of Brunson against the Ætna Insurance Company of Hartford, Conn. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

George H. Moffett, of Charleston, S. C., and W. B. De Loach, of Camden, S. C., for plaintiff in error.

Ernest L. Visanska, of Charleston, S. C. (Smythe, Frost & Visanska, of Charleston, S. C., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

BOYD, District Judge. The facts will be stated in the course of this opinion. This suit, which was originally brought in a state court

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of South Carolina, and removed for trial upon the petition of the defendant to the United States court, is an action at law upon a policy of insurance issued by the Ætna Insurance Company, the defendant in error, to one J. C. Langford, on the 7th of July, 1905; the date of expiration being July 7, 1910. The policy was for $2,500 on a dwelling house described therein, including heating, lighting apparatus, etc., and $500 on furniture. The value of the building was stated to be $3,500, but the insurer and the holder of the policy, by the terms of the contract, fixed the amount of insurance to be carried on the house at $2,500 as before stated. This policy was duly assigned by Langford to the Bank of Brunson, the present plaintiff in error, which assignment was consented to by the insurance company whilst the policy was in force. W. H. Dowling & Son, of Hampton, S. C., a partnership composed of the said W. H. Dowling and J. T. Dowling, were the local agents of the defendant company, through whom the contract was entered into and the policy issued. Some time about the 27th of October, 1908, the building insured was totally destroyed by fire, and thereupon the Bank of Brunson, through its cashier, sent the following letter, which bore date October 28, 1908:

"Bank of Brunson, Brunson, S. C., October 28th, 1908.

"Messrs. W. H. Dowling & Son, Agts. for Ætna Insurance Company, Hampton, S. C. —Gentlemen: Policy #2007, issued by you to J. C. Langford for $3,000 on his dwelling and furniture, and assigned by J. C. Langford to Bank of Brunson, October 5, 1908. The aforesaid dwelling and furniture was totally destroyed by fire last night. This is to notify you.

"Very truly yours,                               S. A. Agnew, Cashier."

The receipt of this letter by Dowling & Son in due course is admitted. Hampton, the residence of the agents of the defendant, is some six miles from Brunson, where the Bank of Brunson is located. Soon after the posting of this letter, Agnew, the cashier, called W. H. Dowling, the agent, over the phone, and had with him a conversation, which is set out in the record as follows:

"I told Mr. Dowling that I wished that he would come up and look at the fire, to be satisfied that it was a total loss, so that he could make his report to the company."

He said:

"That there was no use for him to come, that he knew, that he had heard about it, and that he was satisfied that it was a total loss, and that there was no use for him to come; that he would go ahead and make arrangements with the company." "Yes; said he had received my letter, and I asked him to come up and examine the property, and he said that he was satisfied that it was a total loss."

The case was tried in the District Court of the United States, at Charleston, S. C., on the 5th of June, 1912, before the judge of said court, and a jury. The letter before set out, the conversation as before stated between Agnew and Dowling, with the policy, constituted plaintiff's evidence. There was, in addition, also the testimony of D. F. Moore, president of the plaintiff bank, relative to a conversation which he had had with the junior member of the firm of Dowling & Son; but what was said was not of a definite character, and would therefore

have little bearing upon the case. At the conclusion of plaintiff's case, based as it was upon the policy, letter, and the conversation, the defendant's counsel moved the court to instruct the jury to return a verdict in behalf of the defendant. This instruction was given, and verdict returned for the defendant, to which plaintiff excepted, and the questions of law involved in this exception are before this court.

[1, 2] In the course of the discussion of the points involved, the plaintiff in error, the Bank of Brunson, will be referred to as the plaintiff, and the Ætna Insurance Company, the defendant in error, will be referred to as the defendant. The policy of insurance contains the following provision:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon, and, within 60 days after the fire, unless such time is extended in writing by this company, shall render a statement to this company signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured and of all others in the property, the cash value of each item thereof and the amount of loss thereon, all other insurance, whether valid or not, covering any of said property, and a copy of all the descriptions and schedules in all policies, and changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire, and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged, and shall also, if required, furnish a certificate of a magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured), living nearest the place of fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify."

The statement required by this provision of the contract, and which in insurance parlance is called the proof of loss, was not rendered to the defendant company by the policy holder, and this omission is chiefly relied on by counsel as a ground to sustain the action of the trial court in directing a verdict for the defendant. Thereupon the question at once presents itself as to whether the defendant waived the proof of loss provided for in the policy; and the solution of this question depends upon the scope of authority of Dowling & Son as agents of the defendant, and to what extent the latter is concluded by their action.

This case was before the court here at November term, 1911, but the point presented for decision at that time was confined more particularly to the question of the admissibility of the contents of the letter from Agnew to Dowling. The letter was not produced, nor had the defendant been served with notice to produce it, and thereupon this court held that the plaintiff was not entitled to give its contents; but that question is not involved now, for in the last trial the letter was not only produced, but it was admitted by the defendant that the same had been received by Dowling. In that decision the court expressly declined to pass on the question of waiver. See Ætna Insurance Co. v. Bank of Brunson, 194 Fed. 385, 114 C. C. A. 303. It is therefore

for us, since the letter of Agnew to Dowling has been introduced, and its contents, together with what passed between these two in the conversation over the phone, are before the court, to determine the question before stated, as to whether the proofs of loss provided for in the policy were waived by the defendant. In this connection it is necessary to consider the South Carolina statute, which provides:

"Any person who solicits insurance in behalf of any insurance company not organized under or incorporated by the laws of the state, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine and inspect any risk. or receive, collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or the consummating of any contract of insurance for or with any such company, other than for himself, or who shall examine into and adjust, or aid in adjusting, any loss for or in behalf of any such insurance company, whether any such acts shall be done at the instance or request or in the employment of such insurance company, shall be held to be acting as the agent of the company for which this act is done or the risk is taken."

If Dowling & Son were only soliciting agents of the defendant, which is admitted to be a foreign corporation doing an insurance business in the state of South Carolina, then we would not, even in view of the South Carolina statute, feel warranted in holding that they could waive specific requirements of the policy; however, it appears that the powers conferred upon these agents were much more extensive. It is one of the provisions of the contract that this policy shall not be valid until it is countersigned by the duly authorized manager or agent of the company at Hampton, S. C., and upon the policy we find an indorsement as follows:

"Countersigned by W. H. Dowling, Agent."

There is a further indorsement on the policy in these words:

"The Ætna Insurance Company hereby consents that the interest of J. C. Langford, as owner of the property covered by this policy, be assigned to Bank of Brunson, Brunson, S. C.   W. H. Dowling & Son. Agt.
"Dated Hampton, S. C., Oct. 5, 1908."

It is evident, therefore, that these agents were clothed with authority far beyond that of a mere solicitor. Upon their action depended the validity of the contract, for by their indorsement they put life into what may be termed merely a memorandum of agreement, which was inoperative until countersigned by them, and, further, in consenting to the assignment of Langford's interest in the policy to the Bank of Brunson, these agents did an act which the company recognized and accepted as valid and binding. The learned trial judge upon the point under consideration, in directing the verdict for the defendant, expressed his opinion as follows:

"With regard to the waiver on the part of the company of the furnishing of any further proofs of loss, I hold that the testimony in the case would not constitute sufficient evidence to go to the jury upon that point."

Being an agent of the character indicated by us, the representative of the defendant, with whom the entire transaction so far as the as-

sured was concerned had been conducted, and the contract consummated, it was but natural, when the loss occurred, that the holder of the policy should notify Dowling, and rely upon him to either provide the details, or instruct the policy holder as to what, if anything more, was required of him to secure the payment of the amount of loss. When Dowling was notified of the loss, and was requested by the holder of the policy to go and make an examination for the purpose of ascertaining the extent to which the property had burned, the reply of the former was in substance that there was no·use for him to make an investigation, that he had heard all about it, that he was satisfied that it was a total loss, and that he would go ahead and make arrangements with the company. Now, what did this mean to the policy holder? Certainly it did not lead him to the conclusion that there was anything further for him to do in order to satisfy the defendant that there was an entire loss. Dowling, the agent, said that "he knew that the loss was total; he was satisfied of the fact." What more, then, would the proofs of loss have established, so far as the destruction of the property was concerned? It is true some other things are required to be included in the proofs of loss provided for in the policy; but when notice of the loss was given by the letter to Dowling, and the conversation had over the phone, it would have been a simple thing for him to advise the holder of the policy that, although he was satisfied the loss was a total one, yet this other information should be furnished to the defendant company. It would not be, in our opinion, fair dealing for an agent, sustaining the relation to the defendant company which Dowling did, and placed in the attitude which the defendant had by its own action presented him to the policy holder, to lull the assured to sleep, to awake only to find that by the action of the agent he had been deprived of the right to recover an admitted loss.

The Supreme Court of the state of South Carolina has been called upon to construe the statute concerning agency, which we have before incorporated in this opinion. In the case of Norris v. Insurance Co., 57 S. C. 363, 35 S. E. 574, the court deals with this subject, and says:

"Was the said Smith only a soliciting agent for insurance for the defendant company? It certainly was in evidence that Smith, although he took applications for insurance, did not countersign policies. This was done by Edgerton, in Atlanta, Ga. But it was also in evidence that Smith, as said agent for the defendant, did receive the premiums for said defendant from the plaintiff, and did deliver his policy, which fact tended to enlarge his powers of agency. It was also in proof that he notified the insurance company of the destruction of the insured building by fire about the 26th of September, 1896, and that also, when the adjuster came to Cokesbury, Smith was with such adjuster when he inspected the ruins. * * * We cannot agree with the appellant that Smith was only a soliciting agent for his insurance company, touching its contract with Mrs. Norris. While it is true he had delivered the policy to Mrs. Norris, the defendant insurance company admits that he was still its agent during the existence of the contract of the insurance company with the plaintiff. It only contends that Smith was not its agent as far as Mrs. Norris is concerned. But we are not prepared to take such subtle view of the matter of agency. These corporations act through agents. There is nothing in the policy issued by this company which names any agent, as such, who can bind the company. This insurance company must remember that its contracts made within our state limits, under our statute, are taken with section 1481, hereinbefore quoted, as a part of such contracts, and that this section 1481 does not in its use of the word 'agent' place any

limitations upon his powers, so as to deprive any one who deals with such agent with respect to a contract of insurance made by such an one with the agent's insurance company as to the principle of the right to impute knowledge."

And we find in the case of Madden & Co. v. Insurance Co., 70 S. C. 301, 49 S. E. 857, another decision of the South Carolina court under the said statute from which we quote the following:

"When a person does any of the acts enumerated in section 1810 of the Code of Laws. the presumption is that he was the agent of the insurance company; but such presumption is subject to rebuttal. This principle does not infringe upon the doctrine announced in Young v. Insurance Co., 68 S. C. 387 [47 S. E. 681]. Our conclusion is that the acts and declarations of the agents, J. W. Spence and F. M. Butt, were prima facie binding upon the defendant, and that they furnished evidence of waiver on the part of the defendant to insist upon its right to require compliance with the terms of the policy as to proofs of loss, especially when F. M. Butt refused to assist in the preparation of the proofs of loss, and declared that the policy was null, and void from the time it was issued. These facts tended to show a denial of liability on the part of the defendant, and that it was intended to rely upon the fact of forfeiture of the policy by the plaintiffs as a ground for refusing payment."

Adopting the interpretation placed upon this statute by the Supreme Court of South Carolina, we find that it has been substantially declared by the court that an agent of an insurance company, who issues policies, collects premiums, and assists in adjusting losses, is such an agent of the company in that state that notice to him of facts constituting forfeiture is notice to the company, for which he is agent, and in the Norris Case it is held, as will be seen, that it was proper to leave this question as to the character of the agent upon whom notice of loss was served to the jury. This statute, with the construction and interpretation given it by the court in South Carolina, was a law of the state at the time the policy under consideration was issued, and it became a part of the contract. It is a well-settled principle that the federal courts will, with some well-defined exceptions, adopt the construction placed upon state statutes by the highest court of the state in which such statutes are enacted. The case here does not fall within any of the exceptions.

The Supreme Court of the United States, in the case of Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689, treats of the question of waiver of specific stipulation in a policy of insurance, and what is said in that case has an important bearing upon the question which we are now considering. The policy in that case contained an express declaration that the agents of the company were not authorized to make, alter, or abrogate contracts, or waive forfeitures. The litigation in the case arose over the fact that a certain agent of the insurance company had accepted notes, instead of cash, in payment of premiums, and had from time to time extended the period in which such notes were to be paid. Speaking of this practice, the Supreme Court said:

"That it did authorize its agents to take notes, instead of money, for premiums, is perfectly evident, from its constant practice of receiving such notes when taken by them. That it authorized them to grant indulgence on these notes, if the evidence is to be believed, is also apparent from like practice. It acquiesced in and ratified their acts in this behalf. For a long period, it allowed them to give an indulgence of 90 days; after that, of 60; then of 30, days. It is in vain to contend that it gave them no authority to do this,

when it constantly allowed them to exercise such authority, and always ratified their acts, notwithstanding the language of the written instruments."

In the course of the opinion in the case, it is declared by the court that a party always has the option to waive a condition or stipulation made in his own favor, and, speaking of the forfeiture in regard to the powers of its agent, the court says:

"A waiver of the stipulation or notice would not be repugnant to the written agreement, because it would only be the exercise of an option which the agreement left in it; and whether it did exercise such an option or not was a fact provable by parol evidence, as well as by writing, for the obvious reason that it could be done without writing."

Further, the court says that:

"Forfeitures are not favored in the law, are often the means of great oppression and injustice, and, where adequate compensation can be made, the law in many cases, and equity in all cases, discharges the forfeiture, upon such compensation being made."

And following the rule laid down in Statham's Case, 93 U. S. 24, 23 L. Ed. 789, it is held that, although in insurance the time of payment of a premium is material, and cannot be extended by the courts against the assent of the company, yet, where such assent is given, the courts should be liberal in construing the transaction in favor of avoiding a forfeiture.

Returning to our case, the contention of the defendant is that the right to recover on the policy has been forfeited, not by any act of the holder in violation of the contract before the property was destroyed by fire, but because that, after the loss had taken place, a particular stipulation in the policy, requiring the insured to furnish in a certain form a proof of loss, has not been complied with. In view of the facts and circumstances of the case, and bearing in mind the South Carolina statute, and the decision of the highest court of the state construing it, as well as the principles of law declared by the Supreme Court of the United States, it is our opinion that it was competent for the plaintiff, if he could, to prove that the requirement for formal proof of loss had been waived by an authorized agent of the defendant; and we also think that there was sufficient evidence to go to a jury on the question of waiver, and that upon the undisputed facts the jury would have been warranted in finding that by the action of the agent the defendant had waived compliance with the requirement of the policy with regard to the proof of loss.

Without going further into a discussion of the case, and without intending to deprive the defendant of the benefit of any other defenses it may have to plaintiff's claim, we hold that it was error in the trial judge to direct a verdict for the defendant in the face of the evidence, relative to waiver of proof of loss; and for this reason we think the judgment of the District Court should be reversed, and the case remanded; to the end that a new trial may be had.

Reversed.