Harry Taylor *et al. vs.* Northern Insurance Co.
Harry Taylor *et al. vs.* Peoples National Fire Insurance Co.

JULY 8, 1919.

Present:   Parkhurst, C. J., Sweetland, Vincent, and Stearns, JJ.

(1)   *Fire Insurance.   Insurable Interest.*

X. being the owner of property subject to a first mortgage to A. and a second mortgage to B. conveyed the property to B. and B. executed a transfer of

his second mortgage and note to X. but the note was not endorsed and it did not appear whether the transfer and note were ever delivered to X.

X. had spent about $600 in improvements on the property while he owned it.

*Held,* that X. had an equitable interest in the property to the extent of the amount expended by him in improvements, which claim would be recognized and protected in equity and having such equitable interest he had an insurable interest therein.

*(2) Fire Insurance. Actions. Parties.*

Under a policy payable to X. as first mortgagee and to Y. as second mortgagee, after the death of X., Y. by survivorship may maintain an action under the "loss payable" clause in his own name without joinder of the executor of X.

*(3) Fire Insurance. Action by mortgagee.*

In an action by mortgagee under the "loss payable" clause of a fire insurance policy, request of defendant to charge that "the insurable interest of plaintiff is limited to the amount of his mortgage note—only one-third of this can be recovered from the company together with interest" was properly denied, for the action was on the contract made by defendant with mortgagor and it was the interest of the mortgagor which was insured and not of the mortgagee who under the loss payable clause was simply the appointee of insured to whom payment was to be made of any loss due under the policy and whose right to recover was subject to be defeated by any defence valid against the mortgagor.

*(4) Fire Insurance. Description of Property.*

In a fire insurance policy the property was described as a "three story frame dwelling house and additions with shingle roof occupied for dwelling house purposes," and it appeared that the building contained about nine tenements with a room on the lower floor which had at one time been used as a store previous to the time the property was bought by the last owner, and thereafter used as a bed room until about a week prior to the fire.

*Held,* that the purpose for which the building was designed was immaterial. The property when insured was used as a dwelling house and continued to be used exclusively as such.

*(5) Fire Insurance. Description of Property.*

In the description of property under a policy of fire insurance the test is, not what was the use for which the building was originally designed, but what was the actual use which was made of the building at the time the insurance was taken out and during the time covered by the policy.

*(6) Fire Insurance. Proof of Loss.*

Where a proof of loss although somewhat informal concluded "any other information that may be required will be furnished on call and considered a portion of these proofs," it was sufficient to comply with the requirements of the policy and if defendant desired more detailed information it could have procured it, and if it objected to the proof it was in fairness bound to notify insured within a reasonable time, and failing to do so it cannot on the trial set up a merely formal objection to defeat recovery.

*(7)   Fire Insurance.   Proof of Loss.*

Where the jury was instructed that insured was required to make proper proof of loss, the question was properly left to it to decide whether or not defendant had waived any deficiencies or defects in the proof of loss.

*(8)   Fire Insurance.   Awards.   Procedure.*

Where the validity of an award was not questioned at a trial under a policy of fire insurance, the defendant will not be heard to object to the award on hearing on bill of exceptions.

DEBT under policies of fire insurance.   Heard on exceptions of defendant and overruled.

STEARNS, J.   These are actions of debt on two fire insurance policies which were brought originally by Harry Taylor, the owner of the building insured, Sarah J. Wood and Daniel Di Meo, first and second mortgagees respectively.   One policy for $2,000 was issued by the Northern Insurance Company, April 9, 1912, to Harry Taylor for a period of three years; it is in the standard form and contains a loss payable clause whereby the loss if any is made payable to Sarah J. Wood first and Daniel Di Meo second mortgagee, also a mortgagee clause in the usual form whereby the loss if any is made payable to Sarah J. Wood first and Daniel Di Meo second mortgagee, as interest may appear, with provisions that the interest of the mortgagees should not be invalidated by any act or neglect of the mortgagor owner of the property, etc.   The second policy of insurance on the same property for $4,000 was issued by the Peoples National Fire Insurance Company to Daniel Di Meo, September 27, 1911, for a period of three years and made payable in case of loss to Sarah J. Wood mortgagee as her interest may appear.   March 20, 1912, Di Meo with the written consent of the company assigned his interest as owner to Harry Taylor.   Also attached to and made a part of this policy is a mortgagee clause dated March 20, 1912, whereby loss if any is made payable to Daniel Di Meo as second mortgagee (or trustee) as interest may appear, etc.

The property insured was destroyed by fire May 10, 1912, and proofs of loss executed by Harry Taylor were filed with the defendant companies June 6, 1912.

By a letter dated July 9, 1912, to Harry Taylor the Northern Insurance Company acknowledged the receipt of the proof of loss and in regard thereto stated as follows:   "This Company must decline to accept the same as in full compliance with the terms and conditions of the policy, as the property does not appear to be properly described either in the policy or said purported proof and for other good and sufficient reasons."   The letter then proceeds, after stating that the company does not waive any of the conditions of the policy, with the statement that the company desires that the amount of sound value and damage be ascertained as called for under the terms of the policy; the company names Charles A. Cooley to act as appraiser for the company and requests Taylor to name an appraiser to represent his interest.   On the same day a similar letter was sent to Taylor by the defendant the Peoples Insurance Co.

On July 20, 1912, acting in pursuance of the terms of the policies, Taylor and the defendant companies agreed to submit to M. J. Houlihan and C. A. Cooley, as appraisers, the adjustment of the sound value and loss of the property; Houlihan and Cooley selected as umpire one V. W. Beck and on October 15, 1912, Cooley and Beck made their award in writing, whereby they found that the sound value and the loss and damage were $3,279.

The defendants refused to pay the award and these suits were brought May 5, 1913, to recover on the award.   Numerous amendments to the original declarations and demurrers and objections to parties plaintiffs have been made and argued by counsel in the Superior Court, detailed reference to which pleadings and decisions thereon is unnecessary in this court.

From the record in each case it appears that on May 6, 1914, the death of Sarah J. Wood was suggested to the court and thereupon John Dexter, executor of Sarah J. Wood, was

substituted in her place as a party plaintiff: April 25, 1915, Harry Taylor on motion was allowed to discontinue and judgment on discontinuance for each of the defendants against the plaintiff Taylor for costs of defense was entered; February 17, 1917, in the Northern Insurance Company case John Dexter, executor of Sarah J. Wood, was dropped as a party plaintiff, thereby leaving Di Meo as the sole plaintiff in this case and on the same day in the Peoples Insurance Co. case Di Meo was dropped as party plaintiff, thereby leaving John Dexter, executor, sole plaintiff in the second case. At the trial of these cases the second count of the declaration in each case, which was based on the mortgagee clause was dropped by the plaintiff and the cases were then submitted to a jury on the single count in each declaration based on the loss payable clause. A verdict was returned in each case in favor of the plaintiff. Subsequently defendant's motion for a new trial in each case was denied by the trial justice and the cases are now before this court upon the defendants' bills of exceptions. The two cases although tried before different juries, at the request of counsel, are considered together by this court as practically the same questions are raised in each case.

The first exception raises the question whether Di Meo had any insurable interest as mortgagee in the property destroyed by fire. The estate in question was originally owned by Sarah J. Wood and by her was conveyed September 2, 1911, to Di Meo who on the same day gave to Mrs. Wood a mortgage thereon for $2,500. with the express condition in said mortgage that Di Meo should paint and repair the mortgaged premises. On the same day Di Meo also gave a second mortgage with a mortgage note for $800. to Harry Taylor upon the said property.

Taylor conducted the negotiations for the sale and acted as agent for Mrs. Wood in the transaction referred to.

From the indorsements on the mortgage note for $800 it appears that six month's interest thereon was paid in advance on September 2, 1911, and again interest was paid on March

2, 1912, up to September 2, 1912, and that $100 on the principal was paid March 2, 1912. On the 18th day of March Di Meo by warranty deed conveyed the fee in the property to Taylor with a covenant therein that the premises were free from all incumbrances except two mortgages amounting to $3,300, and on the same day Taylor executed a mortgage transfer to Di Meo, on a printed blank of the customary form, of the mortgage deed and note which had previously been given by Di Meo to Taylor.

The consideration of the transfer, which was not acknowledged or recorded, as stated therein was the payment of "$800. by Harry Taylor to Harry Taylor." It does not appear in the testimony whether this mortgage transfer and the mortgage note which was never endorsed by Taylor were ever delivered to Di Meo and we are left to conjecture in regard to the facts. All that the record discloses is that the note and transfer were produced by counsel for the plaintiff Di Meo, but Di Meo was not called as a witness by either party. It is argued that the transfer of the mortgage was a cancellation thereof and that Di Meo has now no interest in the estate.

The testimony of Taylor in regard to the transaction was somewhat contradictory but we think the effect of his testimony is fairly expressed by the following extracts therefrom. "88 Q. Then you cancelled the indebtedness which he owed you and in addition to that you assumed an indebtedness of $800. didn't you ? A. Well, I suppose it is practically the same thing as making out a new mortgage—transferred that one back. At least we thought so at the time. 106 Q. Do you know how much money he spent on repairs? A. Well painted the house and repaired it; it needed painting, quite a large house, and I should say around $600. the repairs to that house were. 108 Q. And when he transferred to you, was this matter of repairs spoken of? A. Yes that was considered, of course I considered that— 109 Q. Did that have anything to do with your transferring the mortgage, rather than forgiving the mortgage, as Mr. Jones calls it.

A. Why no,—in a way—I knew he done the repairs and that the property was worth it; otherwise I wouldn't have transferred the mortgage back to him. 111 Q. You and Mr. Di Meo considered that you owed him the amount of that mortgage? A. Yes. 111 Q. And owe it to him to-day? A. Yes, I do."

It thus appears that Di Meo at the least had an equitable interest in the property to the extent of the amount expended by him in improvements thereon. Taylor, the present owner, acknowledges the indebtedness and whatever the exact legal effect of the transaction in question may be, it is clear that Di Meo has a lien or claim on this property which a court of equity would recognize and protect. As Di Meo had an equitable interest in the property, he had an insurable interest therein. *Tuckerman* v. *Home Insurance Co.*, 9 R. I. 414; *Williams* v. *Roger Williams Insurance Co.*, 107 Mass. 377; although we have thus considered this question at some length, the decision thereof is not strictly necessary as the interest, the loss of which is sued for in the first and now the only count in each declaration, is the interest of the owner and not that of the mortgagee.

In the Northern Insurance Company case exception is taken to the ruling of the court in denying defendant's motion to strike out the first count of the declaration. Error is alleged because the count is for recovery by the plaintiff Di Meo alone under the "loss payable" clause, without the joinder of Mrs. Wood's executor, while the loss is made payable to both Mrs. Wood as first mortgagee and Di Meo as second mortgagee.

(2)

The court did not err in refusing to strike out this count. The mortgagee may sue in his own name upon a policy in this form. *Smith* v. *Union Insurance Co.*, 25 R. I. 260 and cases cited therein at p. 268.

In *Brown* v. *Roger Williams Insurance Co.*, 5 R. I. 394, it appears that a policy of fire insurance was issued by the defendant company to the owner and mortgagor of a stock of merchandise, and the loss if any was made payable by the

terms of the policy to the plaintiff mortgagee of the stock insured.   It was held that the plaintiff was entitled to bring suit on the policy and to recover the entire amount of the loss, without regard to the fact whether the mortgage debt was paid or not; which fact affected only the account of the proceeds of the action which plaintiff would be required to render other mortgagees and the owner of the property insured.

In the case of the Northern Insurance Company, Mrs. Wood and Di Meo were joint payees or assignees of the policy; after the death of Mrs. Wood, Di Meo by survivorship was entitled to bring the action in his own name. *Anderson* v. *Martindale*, 1 East. 497; *Smith* v. *Franklin*, 1 Mass. 480; *Donnell* v. *Manson*, 109 Mass. 576.

Certain exceptions in the Northern Insurance Company case are to the rulings of the trial court denying the defendant's first and second requests to charge the jury.   The first request is as follows: "The insurable interest of the plaintiff covered by the policy in suit is limited to the amount of his mortgage note upon which there was due at the time of the fire $700—only one-third of this amount can be recovered from the insurance company named as defendant in this case, together with interest from the date when said amount became due."   The second request is similar to the first.   These requests were properly denied.   The plaintiff in the first count was suing on the contract made by defendant with Taylor.   The property insured was Taylor's, the mortgagor, by whom the premium was paid and to whom the policy was issued.   It was the interest of Taylor the mortgagor that was insured and not of the mortgagees, who under the loss payable clause were simply the appointees of Taylor the insured, to whom payment was to be made of any loss due under the policy, and whose right to recover under the policy was subject to be defeated by any defense which was valid against Taylor.   *Smith* v. *Union Fire Ins. Co. supra*, and *Brown* v. *Roger Williams Ins. Co. supra*.

Other exceptions are to the ruling of the court denying the defendant's third and fourth requests to charge. The question thus raised is whether the policy in suit is void because of a false description of the property insured. In the policy the property is described as a "three story frame dwelling house and additions with shingle roof occupied for dwelling house purposes." The building in question was about twenty-five feet wide and contained about nine tenements. On the lower floor there was a room in the front about eighteen or twenty feet in width and about the same depth, which some years before the property was purchased by Mrs. Wood had been used at one time as a saloon and later as a grocery store. There was a stairway also on the front about four or five feet wide, which gave access to the upper tenements. This room had not been used as a store for several years prior to the time when Mrs. Wood bought the property; during the period of Mrs. Wood's ownership the room was used as a bedroom by Mrs. Knight, one of her tenants, who paid rent for it in addition to the rent paid for her tenement which was on the second floor. The room had the usual bedroom furniture, and lace curtains and shades on the windows. The room continued to be used as a bedroom by various lodgers until a week or two prior to the fire when the boarder who occupied it moved out, but no change was made in the arrangements. On this state of facts the defendant claims that the property was a store and tenement property combined and not simply a tenement property. It is admitted that the rate of insurance is higher on the first class of property than on the last mentioned.

It is argued that the description of the property by the insured as a dwelling house is a warranty that the property was designed for the purpose of a dwelling house and not for a combination of dwelling and store.

In the circumstances the purpose for which the building was designed is immaterial. The property when it was insured was used as a dwelling house and continued to be used exclusively as such.

The case of *Thomas* v. *Commercial Union Assurance Co.*, 162 Mass. 29, cited by the defendants in support of their contention differs materially in the nature of the facts from the cases at bar. In the *Thomas* case the plaintiff bought at auction a parcel of land and building thereon which for a number of years prior to the sale to plaintiff had been used as a hotel, which was known as the Glen Hotel, and was so described by the auctioneer at the sale. The building contained the usual rooms ordinarily found in a hotel which were numbered and adapted for the varied uses of guests. After the sale plaintiff employed a caretaker, who slept in one of the rooms, the rest of the structure being unoccupied. In the policy of fire insurance issued to plaintiff, the building was described as a frame dwelling house. It was held that the mere fact of the employment of the caretaker who slept in one of the rooms and the undisclosed intention of plaintiff to let the house as a dwelling house, did not change the open and visible character of the property; as the building in question was a hotel and as a hotel risk was different from and more hazardous than a dwelling house risk, the description of the property in the policy was such a misdescription as avoided the policy. In its opinion the court, at page 33, says: "No doubt the plaintiff could have made a dwelling house of it; but she did not," and again: "It is possible that a building, though called a hotel, may be in fact a dwelling house, and more correctly described as such."

In our opinion the test in each case is not what was the use for which the building was originally designed but what was the actual use which was made of the building at the time the insurance was taken out and during the time covered by the policy. The building in question in this case was properly described as a dwelling house.

Exception is also taken, in each case, to the refusal of defendant's motion to direct a verdict for the defendant. The grounds on which this motion was made were that no sufficient proof of loss was filed with the company, and a misdescription of the property; the latter objection has

already been disposed of. So far as appears from the record the only specific objections made at the trial to the proof of loss were made by the defendant at the conclusion of plaintiff's case, on a motion for nonsuit. The defendant claimed that the proof of loss was insufficient because the names of the tenants were not given therein, the statement thereon being as follows. The building described was occupied as follows: "First floor, three tenements all vacant; second floor, three tenements, all occupied as dwelling; third floor, 3 tenements all vacant." Objection also was made that the proof did not show all incumbrances. The insured by the

(6) terms of the policy was required to give immediate notice of any loss to the company and within sixty days after the fire to render to the company proof of loss. The proof of loss although somewhat informally drawn was sufficient to comply with the requirements of the policy. It concluded as follows: "any other information that may be required will be furnished on call and considered a portion of these proofs." This was notice to defendant of a desire on part of the plaintiff to comply with all requirements of the defendant. If defendants desired more detailed information they could easily have procured it from the plaintiff and if defendants objected to the proof, they were in fairness bound to notify plaintiff within a reasonable time. As defendants failed to do this they cannot now be permitted to set up what appears to be merely a formal objection to defeat plaintiff's recovery. The jury was instructed that

(7) plaintiff was required to make proper proof of loss and the question was left to the jury with suitable explanation to decide whether or not the defendant had waived any deficiencies or defects in the proof of loss. There was no error in this respect. *Davis, Hackett & Co.* v. *Western Mass. Ins. Co.*, 8 R. I. 277.

The defendants for the first time now seek to raise certain objections to the award. As the validity of the award was not questioned by either party at the trial, it is now too late

(8) for defendants to seek to impeach the award, and we do not consider that this question is properly before us.

As the verdict in each case has been approved by the trial justice and as we find no reversible error in the record of these cases, all of the exceptions of the defendant in each case are overruled and the cases are remitted to the Superior Court with direction to enter judgment on each verdict.

*Philip S. Knauer, John Henshaw,* for plaintiffs.    *Walter J. Ladd, Henry E. Fowler,* of counsel.

*Frederick A. Jones,* for defendants.