Princess Ring Co., Inc.  
    vs.    No. 84495.  
The Home Insurance Co.

April 20, 1931.

BLODGETT, P. J. Heard without the intervention of a jury.

Action to recover loss by reason of a robbery.

Defendant issued a policy, No. J. B. 5051, to plaintiff corporation March 13, 1930, for one year ending March 14, 1931, called a Jewelers' Block Policy, the aggregate sum insured being $51,500, and received a premium therefor of $743.00.

The property insured consisted of pearls, precious stones, jewels, watches and watch movements, and other stock usual to the conduct of the assured's business, whether the property of the assured or entrusted to him, while the same is (save as provided herein) in or upon any premises or place whatsoever or being carried in transit by land or water in the United States, and so forth.

The policy covers loss of and/or damage to the above described property or any part thereof arising from any cause whatsoever except as hereinafter mentioned. Then follow exceptions lettered from A to K inclusive.

The only exception affecting the present action is that Marked I, as follows:

"(I) Loss or damage to property insured hereunder whilst in or upon any automobile, motorcycle or horse drawn vehicle unless such conveyance is attended at the time the loss occurs by a permanent employee of the assured, or by a person whose sole duty is to attend the conveyance and who at such time shall remain in or upon the conveyance;"

Then follows a number of stipulations and conditions numbered from 1 to 19 inclusive construed as conditions precedent to any recovery under the policy.

The only ones affecting the present action are considered later in this rescript.

Then follows a number of statements in the application attached to the policy. Among them is a statement by the assured as to the names of employees having merchandise in their custody in excess of $5000.00, viz.: Milton M. Epstein and Harvey M. Epstein, and a statement that only one salesman is out at any one time.

On the 11th day of June, 1930, Harvey Epstein, a salesman employed by plaintiff and the Harvey M. Epstein mentioned above, left the office of the defendant corporation at 48th street, New York City, about 9:30 o'clock in the forenoon in a one-seated automobile having stored in the rumble seat two telescope cases containing jewelry, diamonds, etc. Before leaving the office he telephoned to his brother, who lived in an apartment house at

1920 Harrison avenue, Bronx, New York, that he was on the way there. Epstein drove up town to the apartment and parked his car by the right hand curb in front of the apartment. Much stress was laid by defendant as to just where the car was parked, and four photographs of the locality were placed in evidence.

Defendant's Exhibit A shows one end of the apartment house and an iron fence with a ledge. The cross marked over the same is claimed by defendant as the spot where one George Mark was sitting when Epstein stopped at the curb.

Defendant's Exhibit B shows the apartment and a balustrade leading to the entrance.

Defendant's Exhibit F shows the balustrade and the post by the entrance.

Defendant's Exhibit G is the same, the location of an automobile being shown where defendant claims the Epstein car was parked.

When Epstein drew up to the curb he saw one George Mark, a rabbi and the father-in-law of Milton Epstein, and stepping out of the car he beckoned to Mark and asked him to watch the car as there was something in it. Epstein further testified that he waited until Mark was leaning against the car with one foot on the running-board next to the curb. Epstein then crossed the sidewalk and mounted the steps to the apartment, and was pushing the bell when he heard Mark yell; that he turned about, ran down the steps and saw a strange man seated behind the wheel; that he ran across the sidewalk in front of the car, jumped on the running-board and reached into the car to grasp the wheel; that he was pushed off the running-board after the car had started and almost fell in the street; that he ran after the car about 50 feet and commandeered a passing car, telling the driver what had happened; that the Epstein car turned east into Burnside avenue and that when he reached the corner, it was out of sight. Epstein then went to the High Bridge police station and notified the police, then took a taxi and returned to his brother's apartment, and they both went to police headquarters and reported the robbery.

The circumstances of the entrance of a stranger into the car and his own position on the same after being asked by Epstein to watch the car as there was something in it, were confirmed by Mark.

Epstein testified the steps leading to the apartment were distant about 20 feet and the steps 10 feet in length. There is some controversy as to the exact position of the car but Epstein testifies that at no time was it out of his sight. Epstein and Mark were the only witnesses to the robbery and their account the only one we have.

Defendant claims plaintiff can not recover under this policy by reason of Exception (I), owing to the fact that the car was not properly attended, and that Epstein, the employee in charge, negligently left the vehicle.

Plaintiff claims that he left the car with an attendant upon the vehicle and at no time was out of sight of the car and at all times within 30 feet of same.

Epstein left Mark to watch the machine. Mark apparently undertook to attend the car by leaning against the front door on the curb side and placing one foot on the running-board. The word "attended" is used both as to a "permanent employee of the assured" and as to the person whose sole duty is to "attend" the conveyance.

It will be noted that the second clause is in the alternative and does not require that such person shall be a permanent employee. It does require that the sole duty of such person is to attend the car.

Counsel for plaintiff has cited as a definition of attention as "Attention, regard, the fact of being present, presence."

Counsel for defendant declares the

common meaning of "attendance" is "to be present with or at." It is difficult to distinguish between the two definitions. Bouvier gives as a legal definition of "attendant," "one who owes a duty or service to another."

The exception in the policy (Ex. (I) ) following the words "whose sole duty is to attend the conveyance" contains the following words as to what attendance under the terms of the policy means, viz.: "and who at such time shall remain in or upon the conveyance."

Mark was not in the interior of the car. He was leaning upon the door and had one foot upon the running. board.

Counsel for defendant insists the word "upon" refers to a "motorcycle" and not to an automobile. If this construction is intended by the clause, how should the words be construed with reference to the words "horse drawn vehicle?"

It seems to the Court that Mark was upon the automobile and "attending" to the same within the meaning of these words.

The question still remains whether Epstein, assuming he acted in the promises in compliance with the terms of said exception, did act as a careful and reasonably prudent man would act in leaving the car attended by Mark. There is no testimony that he was not at all times within 30 feet of the car and could see the same from any location had he turned and looked. It was broad daylight and in a comparatively quiet locality. The thief or thieves who stole the car and its contents had not been seen by him until he turned as Mark "yelled" and he saw a stranger behind the wheel. Could he, as a prudent person, have suspected under all the circumstances that such an event as happened would happen?

Under a liberal but exact construction of the meaning of the words used in the exception, bearing in mind that a policy should, in the absence of any suspicion of fraud or collusion, be construed in favor of the assured, the Court is of the opinion that Epstein acted as a prudent and careful man and took due precaution to comply with the terms of said exception. There is no testimony of record that tends to throw any suspicion upon Epstein of fraud or collusion. He appeared upon the witness stand and told his story in a straightforward way without exaggeration or addition of any circumstances that would evidence any undue violence on the part of the thief, or attempt to hide any circumstances which might be construed to show negligence on his own part.

The defendant claims that various conditions precedent to recovery have not been complied with.

(1) That assured did not keep a detailed, itemized inventory as required by Warranty 6 of the policy.

(6) "Warranted that assured keeps a detailed and itemized inventory of all property, including traveling salesmen's stocks, in such a manner that the exact amount of loss can be accurately determined therefrom by the company."

In the application upon which the policy is based appears, in answer to Question 8: (a) "What was the exact amount of your last inventory taken on Feb. 1, 1930?" The answer was $36,469.79. (b) "What was the exact amount of your previous merchandise inventory * * * 6 months prior to (a)?" Answer, $46,233.72.

There also appears in the right hand column the nature of the stock as per last merchandise inventory.

Before issue of policy defendant had access to all books and lists of plaintiff corporation and subsequently policy was issued based upon these answers. There is no testimony on record to show that these answers were falsified.

At the trial a detailed list was filed (Plff's Ex. 1) of the articles inventoried and the price of each ar-

ticle and same was explained by Epstein on the witness stand, how each sheet itemized the number of items of each piece of jewelry, and, further, how on the left side of the sheet the first number represented the manufacturer of the mounting of the ring, the second number the selling retail price, the third number the approximate weight of the diamond, and how under the word price the figures indicated the list price, and how one-third of the list price constituted the cost price.

The Court is of the opinion that this warranty has been complied with.

Defendant further contends that no competent proof of loss was filed as required by Warranty (12) as follows:

"In the event of loss * * * the assured shall give immediate notice in writing to the Company * * * furnish a complete list * * * stating the market value and cost of each article and the amount claimed thereon; and the assured shall within sixty days after a loss * * * render to the Company a proof of loss signed and sworn to by the assured, stating * * * * * * the time and cause of the loss * * * the interest of the assured and of all others in the property affected; the cash value of each item thereof, and the amount of loss of * * * * thereto; all encumbrances thereon; all other contracts of insurance thereon * * * *."

On the 10th day of July, 1930, Alfred Spear, Treasurer of plaintiff corporation, upon a blank furnished by the Company, swore to a proof of loss (Plff's Ex. 2) which was duly filed with the Company.

This states the cause of the loss, the cost value of the articles lost as $34,415.49, the amount of insurance as $50,000.00, the whole loss as $35,446.31, and the amount claimed as $34,415.49. Then follows the usual statements as to title, and so forth, an agreement to reimburse the Company in case of recovery of any articles by assured. Then follows the following: "Any other information that may be required will be furnished on call, and considered a part of this proof."

On several sheets attached to this proof of loss appear all the items claimed to have been lost, and Spear, treasurer of the assured, testified fully as to the cost of each item as specified in said proof, and how the cost was arrived at under the same. Spear also testified as to conferences in the offices of Luttrell, Newhouse & Sayre, Inc., in New York, the Eastern General Agents of the Company, at which the items of proof of loss were gone over and discussed, and that at no time was any objection made as to the various items and the cost thereof, or any demand made for further proof, and that he (Spear) was led to believe that no technical objections would be made as to same. Sayre, a member of said corporation acting as general agents for the company, appeared as a witness and did not attempt to deny the testimony of Spear in these respects.

It seems to the Court that if any technical defects were to be urged by the Company, after filing of the proofs of loss, that the assured should have been notified of the same at such conferences, and some demand made for further proof. The action of the agent representing the company at such conferences would act as a waiver of any technical objections to the matter of proof of loss as contained in Plff's Ex. 2, in the mind of the Court.

See Cooley's Brief on Insurance, 2d ed. Vol. 7, P. 6051:

"The theory most frequently advanced as a basis for the rule as to waiver of defects in the notice or proofs by failure of company to object thereto is, that if the company is not satisfied with proofs furnished, it is incumbent on it to give the insured notice thereof in order that they may be corrected. If proof

furnished gives the company all information desired, they have fulfilled their purpose and the insured should not be defeated by reason of any formal defect which he might have remedied. If they do not give the information, the insurance company should not be permitted to defeat the claim when it could have secured what it desired by merely pointing out what was lacking."

For waiver of deficiencies or defects in proofs of loss, see

> *Brunson Bank* vs. *Aetna Ins. Co.*, 203 Fed. 810;
>
> *Lee* vs. *Casualty Co. of America*, 90 Conn. 202;
>
> *Moore* vs. *Wildey Casualty Co.*, 176 Mass. 418;
>
> *Glazer* vs. *Home Ins. Co.* 190 N. Y. 6;
>
> *Hunter* vs. *Federal Casualty Co.*, 199 App. Div. 223, 191 N. Y. S. 474;
>
> *Taylor* vs. *Northern Insurance Co.* 42 R. I. 354, 107 A. 238.

Defects in proof of loss held waived by insurance company by agent's retention of statement furnished without advising insured of defects.

> *Fed. Land Bank of Spokane* vs. *Rocky Mountain Fire Ins. Co.*, 279 P. page 239.

Objection to sufficiency of proof of loss in suit on insurance policy may not be made for first time at trial

> *Hyde* vs. *Southern Surety Co.*, 226 N. W. 555.
>
> See also *Alston* vs. *Phenix Ins. Co.* 27 S. E. 981, and *Gray* vs. *Blum*, 55 N. J. Eq. 553.

Under condition 19 of the policy appears the following:

"And no officers, agent or other representative of this company shall have power to waive or deemed to have waived any provision * * * unless such waiver, if any, shall be written on or attached hereto * * *."

The policy in question was executed by Luttrell, Newhouse and Sayre, Inc., Eastern General Agents.

An agent who writes and delivers insurance policies has the same authority to waive a condition in the policy that the company itself has.

> *Brennen* vs. *Conn. Fire*, 74 S. W. 406;
>
> See also *Farmers Fire Ins. Co.* vs. *Baker*, 94 Md. 545;
>
> *Tillis* vs. *Liverpool Ins. Co.*, 46 Fla. 268;
>
> *Phenix Ins. Co.* vs. *Grove*, 116 Ill. App. 529;
>
> *Horton* vs. *Home Ins. Co.*, 29 S. E. 944;
>
> *Richards* vs. *Springfield Fire Ins. Co.*, 38 S. E. 563.

Much stress is laid in the brief of defendant company as to a breach by assured of the warranty as to low valued stock, as appears upon page 2 of the application for the policy. The computation is much involved and difficult to understand. After the application was filed the company had access to all books, inventories and papers of assured and could have determined from these whether there was any substantial misrepresentation on the part of applicant. During the trial assured was ordered to produce all its books, papers and records relating to the premises, and did produce what it claimed to be all such books, papers and records, which were subject to examination by the company. No testimony was offered by the company attacking such books and records, and no examination disclosed any falsity in the proofs of loss submitted or any substantial variance from the statements in the application and the proofs of loss.

The total loss claimed is much less than the amount of the policy.

The question has been raised as to whether the assured is entitled to recover the value of merchandise on memorandum placed in care of assured by the Kauffman Manufacturing Company.

Reference to this item, amounting to $2,441.00, is specifically made by assured in the proof of loss. Plaintiff's

witnesses testified that the actual items were omitted at the suggestion of Sayre, who told the plaintiff that this was not covered under the policy.

The language used in the policy itself is: "whether the same be the property of the assured or is intrusted to him * * * on sale * * * or for any other purpose whatsoever."

There was testimony admitted in the trial of the case that goods and merchandise of the cost value of $2,441.00, belonging to said Kauffman Mfg. Co., were intrusted to and in possession of the assured at the time of the robbery and were taken by the thief.

As to the question of waiver of warranties it is interesting to note that in the course of a letter dated March 13, 1930, from the general agents in New York of the company, relative to policy J. B. 5051 (Plff's Ex. 4), the writer says: "We do not consider the statement in the proposal form—'in trunks on railroad tickets or by auto in the custody of two people,' as a warranty in the policy."

Relative to the claim of the Kauffman Mfg. Co., Spear testified that Sayre, representing the company, told him to omit this from the proof of loss as same did not belong there, and while the claim is referred to in the proof of loss, same is not itemized as required.

In the case of *L. W. Names* vs. *The Union Ins. Co.*, 104 Iowa 612, being an action brought under a fire insurance policy, the plaintiff testified as to two feather beds not included in the proof of loss and the Court held that testimony may be given of the value of an article destroyed but not included in the proof of loss, since the plaintiff has the right to amend to conform to the proof.

In the present case the claim being inserted in the proof of loss, the Court is of the opinion same should be allowed.

So many cases establish the rule as to interpretation of policies of insurance that same should be construed liberally in favor of the assured, where no question of fraud or collusion is at issue, that it is unnecessary to cite same.

The plaintiff is entitled to recover $31,494.34, being the cost of the merchandise lost, and $2,441.00 for the cost of merchandise of the Kauffman Mfg. Co. properly in its possession, and interest from September 10, 1930, being a total of $33,935.34, with interest from September 10, 1930.

For plaintiff: Ira Marcus.

For defendant: Greenough, Lyman & Cross; George Paul Slade.